NVB 4001 (Rev. 12/15)

# * * § 362 INFORMATION SHEET * *

DEBTOR: Cal Neva Lodge, LLC
MOVANT: Ladera Development, LLC
BK-: 16-51281
CHAPTER: 11
MOTION #: 1

**_Certification of Attempt to Resolve the Matter Without Court Action:_**
Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.
Date: March 1, 2017
Signature: /s/ Jason E. Rios
Attorney for Movant

PROPERTY INVOLVED IN THIS MOTION: 100% Membership Interests in New Cal Neva
NOTICE SERVED ON: Debtor(s) ✓ ; Debtor's counsel ✓ ; Trustee ☐ ;
DATE OF SERVICE: March 1, 2017

**MOVING PARTY'S CONTENTIONS:**
The EXTENT and PRIORITY of LIENS:
1st  Ladera $8,217,973 - 2nd DOT on Resort
2nd  Hall $26,908,827 First on Resort
3rd  Penta $9,152,000 on Resort
4th
Other:
Total Encumbrances: $8,217,973.81 *
*Not less than as to Membership Interests.
APPRAISAL of OPINION as to VALUE:
Less than $44,000,000 for resort and no value for Membership Interests

**DEBTOR'S CONTENTIONS:**
The EXTENT and PRIORITY of LIENS:
1st
2nd
3rd
4th
Other:
Total Encumbrances:

APPRAISAL of OPINION as to VALUE:

**TERMS of MOVANT'S CONTRACT with the DEBTOR(S):**
Amount of Note: $6,000,000
Interest Rate: 12%, default 16%
Duration: Maturity 9/29/17 - But accelerated
Payment per Month: variable
Date of Default: 1/16
Amount in Arrears: $8,217,973.81
Date of Notice of Default: 2/12/16
SPECIAL CIRCUMSTANCES:
Membership Interests were pledged as add'l collateral in loan to New Cal-Neva
SUBMITTED BY: /s/ Jason E. Rios
Counsel to Ladera Development

**DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT:**
.
.
.
.
.
.
.
.
SPECIAL CIRCUMSTANCES:

SUBMITTED BY:
SIGNATURE:

LOUIS M. BUBALA III, ESQ.
Nevada Bar No. 8974
KAEMPFER CROWELL
50 W. Liberty Street, Suite 700
Reno, NV 89501
Telephone: (775) 852-3900
Facsimile: (775) 327-2011
e-mail: lbubala@kcnvlaw.com

JASON E. RIOS, CA State Bar No. 190086
(*pro hac vice*)
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
e-mail: jrios@ffwplaw.com

Attorneys for Ladera Development, LLC

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>CAL NEVA LODGE, LLC,<br><br>Debtor. | CASE NO.: 3:16-bk-51281-gwz<br><br>Chapter 11<br><br>**LADERA DEVELOPMENT, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362**<br><br>Hearing Date:    March 24, 2017<br>Hearing Time:   9:30 a.m. |

**TO THE HONORABLE GREGG W. ZIVE, UNITED STATES BANKRUPTCY JUDGE, AND INTERESTED PARTIES:**

Ladera Development, LLC ("Ladera"), a secured creditor and party in interest, files this Motion for Relief from the Automatic Stay ("Motion") pursuant to 11 U.S.C. § 362, and respectfully represents:

////

////

## INTRODUCTION

Ladera seeks relief from the automatic stay to pursue its rights and remedies as to a portion of its collateral, the Debtor's 100% Membership Interests (the "Membership Interests") in the Debtor's wholly-owned subsidiary, New Cal-Neva Lodge, LLC ("New Cal-Neva").[1] As set forth below, the Debtor does not have equity in these Membership Interests, and such interests are not necessary to an effective reorganization of the Debtor.[2] Ladera remains hopeful that a feasible plan will be proposed and confirmed that will satisfy its secured claim in full. However, to date no such plan has been filed. In addition, cause exists to grant relief from the automatic stay, because neither the Debtor nor New Cal-Neva is making adequate protection payments to Ladera, and as New Cal-Neva's primary asset (the Resort) deteriorates and loses value, Ladera's collateral herein (the Debtor's Membership Interests in New Cal-Neva) correspondingly lose their value.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(G). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

2. Ladera respectfully requests the Court to enter an order:

    a. Granting relief from the automatic stay to allow Ladera to exercise its rights and remedies with respect to a portion of its collateral, the Membership Interests, under the Loan Agreements (as defined below) and applicable state law;

    b. Waiving the 14-day stay set forth in Bankruptcy Rule 4001(a)(3); and

    c. For such other and further relief as is just and appropriate in the circumstances of this case.

////

---

[1] Ladera holds deeds of trust on New Cal-Neva's real property including the Resort. This motion is not seeking relief from stay to foreclose on those deeds of trust and is limited to the Membership Interests that were pledged by the Debtor to Ladera as additional collateral.

## BACKGROUND FACTS

1. Cal Neva Lodge, LLC (the "Debtor")'s primary asset is its Membership Interests in its wholly-owned subsidiary, New Cal-Neva. New Cal-Neva's primary asset is a 191-room resort and casino known as the Cal Neva Lodge & Casino located at 2 Stateline Road, Crystal Bay, Nevada (the "Resort"). Ladera and Hall CA-NV, LLC ("Hall" and, with Ladera, the "Lenders") made loans to New Cal-Neva in the fall of 2014 to finance the renovation of the Resort. The Penta Building Group, LLC ("Penta") was the prime contractor for the renovation of the Resort. The Resort has been closed since 2013 while the Debtor pursued the renovation and reconstruction of the property. Work on the project stopped in early 2016 and substantial work remains to complete the project to the point that it can be re-opened and begin to generate revenue. Benvenutti Decl. ¶ 3 Dkt. No. 208. Estimates for the cost to complete the renovation range as high as $40 million.

2. As noted in the Declaration of James Pickett, Ladera's managing member, and the Exhibits thereto (the "Pickett Declaration") which is filed contemporaneously herewith, the Resort is encumbered by a number of liens, including a senior deed of trust granted to Hall, a deed of trust granted to Ladera, and mechanic's liens asserted by Penta. New Cal-Neva defaulted on its Loan (defined below) from Ladera and on its loan from Hall precipitating the bankruptcy filings of the Debtor and New Cal-Neva. Pickett Decl. at ¶¶6-7.

3. The Debtor filed its petition for relief in the above-titled bankruptcy case (the "Bankruptcy Case) on June 10, 2016 (the "Petition Date") in the United States Bankruptcy Court for the Northern District of California (case no. 16-10514 in that court). Dkt. No. 1. The Debtor filed its petition as its forbearance agreement with Ladera was due to expire, and Ladera would have completed its foreclosure on the Debtor's primary asset, the Membership Interests in New Cal-Neva.

4. New Cal-Neva subsequently filed for bankruptcy protection in the United States Bankruptcy Court for the Northern District of California on July 28, 2016 (case no. 16-10648 in that court). Dkt. No. 1 in that case. New Cal-Neva filed its petition shortly before Hall was scheduled to conduct a foreclosure on the Resort.

5. On or about September 13, 2016, the United States Trustee for the Northern District of California, Santa Rosa Division formed the Official Committee of Unsecured Creditors (the "Committee") in the New Cal-Neva case. Dkt. No. 81 in that case. It is worth noting that of the five members of the Committee, four (including Penta) filed secured claims against the New Cal-Neva and the fifth is actually an investor in the Debtor and not a creditor of New Cal-Neva.

6. On September 28, 2016, U.S. Bankruptcy Judge Alan Jaroslovsky signed an order transferring this Bankruptcy Case to the U.S. Bankruptcy Court for the District of Nevada, and on October 25, 2016, an order was entered, assigning this Bankruptcy Case to the Honorable Gregg W. Zive. Dkt. Nos. 78 & 85. Similar orders were entered in the New Cal-Neva bankruptcy case (see Dkt. Nos. 105 & 118 in that case), and both bankruptcy cases are now pending before Judge Zive.[3]

7. In its Schedule B, the Debtor listed a 100% ownership of the Membership Interests in New Cal-Neva, with a purported value of $10,700,000 as the Debtor's estimated equity in the Resort. See Debtor's Schedule A/B, item 15.

8. In its Schedule D, the Debtor listed Ladera as a secured creditor with a claim, as of the Petition Date, in the amount of $7,011,558.82. The Debtor did not specify the property securing the claim, but listed its value at $10,700,000 (same as the Debtor's 100% ownership in New Cal-Neva). See Debtor's Schedule D, item 2.1.

9. In addition, in its Schedule H, the Debtor listed New Cal-Neva as a co-debtor with respect to its obligations to Ladera. See Debtor's Schedule H, item 2.1.

10. On October 11, 2016, Ladera filed a proof of claim (the "Ladera Claim") asserting a secured claim in the amount of $7,471,110.61 as of the Petition Date.[4] Pickett Decl. at ¶2; a true and correct copy of the Ladera Claim No. 15 is attached to the Pickett Declaration as Exhibit "A," and is incorporated herein by reference. As explained in the Addendum to the Ladera Claim, Ladera's Secured Claim against the Debtor is based upon the Debtor's pledge of the Membership Interests in New Cal-Neva to secure timely payment New Cal-Neva's obligations to Ladera. New

---

[3] The new case number for New Cal-Neva is 16-51282.

Cal-Neva's obligations to Ladera are based upon a loan Ladera made to New Cal-Neva in the principal amount of $6,000,000 on or about September 30, 2014, which Loan was secured by collateral including the Resort and other collateral (collectively, the "Collateral"). Pickett Decl. at ¶4; Claim No. 15.

11. On December 1, 2016, Ladera also filed a proof of claim in the New Cal-Neva case (the "Ladera New Cal-Neva Claim"), asserting a secured claim in the amount of $7,678,616.91, as of the date New Cal-Neva filed its petition. Pickett Decl. at ¶2 n.2; see Claim No. 30 in that case. Ladera's total claim as of February 21, 2017 is $8,217,973.81.

12. Attached to the Ladera Claim are true and correct copies of certain relevant documents supporting the Claim, including a: (1) Loan Agreement; (2) Promissory Note Secured by Deed of Trust; (3) Deed of Trust, Security Agreement, Assignment of Rents, and Fixture Filing dated as of September 30, 2014 and recorded in the real estate records of Placer County, California on October 2, 2014 as Document No. 2014-0069286-00; (4) Deed of Trust, Security Agreement, Assignment of Rents, and Fixture Filing dated as of September 30, 2014 and recorded in the real estate records of Washoe County, Nevada on October 2, 2014 as Document No. 4397428; (5) Membership Interest Pledge Agreement; and (6) related UCC Financing Statements. In addition, the Debtor, New Cal-Neva, and Ladera entered into a forbearance agreement dated April 19, 2016, as amended. A true and correct copy of the Forbearance Agreement is attached to the Pickett Declaration as Exhibit "B." The foregoing documents (1) through (6) together with the Forbearance Agreement, as amended, are collectively, the "Loan Agreements". Pickett Decl. at ¶3; see attachments to Claim No. 15 and Claim No. 30 in the New Cal-Neva Case.

13. Relevant to this Motion, as additional security for the Loan, the Debtor pledged the 100% Membership Interests in New Cal-Neva to Ladera (which represent all of the issued and outstanding Membership Interests in New Cal-Neva) to secure payment of New Cal-Neva's obligations to Ladera and these Membership Interests are part of the Collateral. Pickett Decl. at ¶5; see Claim No. 15, "Membership Interest Pledge Agreement" (Exhibit E to Claim).

14. On or about December 6, 2016, New Cal-Neva filed a *Motion for Orders (I)(A)*

*Authorizing and Approving Bidding Procedures, (B) Approving Notice Procedures, (C) Setting a Date for the Transaction Approval Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests or Financing Transaction and (B) the Assumption and Assignment of Certain Contracts* (the "Sale Motion") in its bankruptcy case, seeking to sell the Resort and New Cal-Neva's related assets. Dkt. No. 205 in that case.

15. On January 6, 2017, the court entered an *Order (A) Authorizing and Approving Bidding Procedures, (B) Approving Notice Procedures, and (C) Setting a Date for the Transaction Approval Hearing* (the "Sales Procedure Order"). Dkt. No. 256 in that case.

16. According to the Sales Procedure Order, the Transaction Notice and the Bidding Procedures, Qualified Bidders were required to submit a Qualified Bid for the purchase or financing of the Resort, and related assets, on or before February 15, 2017, at noon (PT) which was the Bid Deadline.[5] Dkt. No. 256.

17. No Qualified Bids were received by the Bid Deadline. In fact, the highest bid received following the solicitation of over 1,600 potential purchasers was less than the collective secured debt asserted against the Resort. Pickett Decl. at ¶9.

18. The sale of the Resort having failed, the secured lender with a first-position deed of trust on the Resort, Hall CA-NV, LLC ("Hall"), has now filed a Motion for Relief from the Automatic Stay Pursuant to Bankruptcy Code Section 362 ("Hall Motion for Relief") in the New Cal-Neva case. Dkt. No. 389 in that case.

19. In its motion for relief from stay, Hall alleges (and Ladera concurs) that New Cal-Neva has no equity in the Resort and related assets. Hall asserts a claim of $26,908,827 against New Cal-Neva. See Claim No. 28 in New Cal-Neva case. The secured claims against the Resort, including the claims of Hall (approximately $27 million), Ladera (approximately $8 million), and renovation contractor Penta Building Group, LLC (approximately $9 million - see Claim No. 32 in New Cal-Neva case), total approximately $44 million, and the highest bid received for the

---

[5] Capitalized terms used but not defined herein have the meanings ascribed to them in the Sale Motion.

Resort was below that amount. Pickett Decl. at ¶11; see Hall Motion for Relief at ¶¶ 7-8, 22-33.

20. In addition, New Cal-Neva, Hall, Ladera, Penta, and the Committee in the New Cal-Neva case had previously entered into a Financing Stipulation, as well as an Extended Stipulation, which allowed New Cal-Neva to use cash collateral through February 28, 2017 (see Dkt. Nos. 90, 91 & 255 in that case). New Cal-Neva defaulted on the Extended Stipulation, which caused New Cal-Neva's authority to use cash collateral (and Hall's funding of property expense advances) to cease as of February 28, 2017. Pickett Decl. at ¶12; see Hall Motion for Relief at ¶ 13. While Hall has now agreed to continue funding through April 2017, New Cal-Neva has no meaningful source of funds for necessary expenses to secure and maintain the Resort after April 2017. Pickett Decl. at ¶12; see Hall Motion for Relief at ¶ 13.

21. To the extent that the Resort (New Cal-Neva's primary asset) has no equity, and especially if the Hall Motion for Relief is granted, the Debtor's Membership Interests in New Cal-Neva have little or no value. Because the Membership Interests secure an $8.2 million debt to Ladera, the Debtor has no equity in the Membership Interests, and such interests are not necessary for an effective reorganization. Pickett Decl. at ¶14.

22. Furthermore, cause exists to grant relief from the automatic stay because neither the Debtor nor New Cal-Neva are making adequate protection payments to Ladera. As the value of New Cal-Neva's primary asset diminishes, so does the value of Ladera's collateral herein (Debtor's Membership Interests in New Cal-Neva). Pickett Decl. at ¶15.

23. Ladera now files this Motion to request relief from the automatic stay to exercise its rights under the Loan Agreements and applicable state law, to foreclose on the Debtor's Membership Interests in New Cal-Neva.

**DISCUSSION**

**I.    Relief from the Stay is Proper Under Section 362(d)(1).**

Section 362(d)(1) of the Bankruptcy Code mandates relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." "Cause" is not specifically defined in the Bankruptcy Code. What constitutes "cause" for granting relief from the automatic stay is decided on a case-by-case basis. *Kronemyer v.*

*American Contractors Indemnity Co.*, 405 B.R. 915, 921 (9th Cir. BAP 2009). Ladera is entitled to relief from the automatic stay for "cause" because its interests in the Collateral, including the Membership Interests are not adequately protected.

Bankruptcy Code section 362(d)(1) makes clear that a lack of adequate protection constitutes "cause" to lift the automatic stay. Ladera's interests in the Membership Interests are not adequately protected. First, the value of the Membership Interests is based solely on the value of New Cal-Neva's equity in the Resort, and New Cal Neva has no equity in the Resort. The Resort is not currently generating any revenue or cash flow for New Cal-Neva other than very minor revenue of roughly $7,000 per month from rental of cable antennas. The Resort has been closed since 2013. The only post-petition funding to date has come from Hall via the Financing Stipulation and the Extended Stipulation (together, the "Stipulations") and totals approximately $720,000, which amount includes Hall's legal fees as well as costs of insurance, utilities, security and monitoring. Yet, despite another three quarters of a million dollars in advances, the Resort continues to deteriorate. The only way for New Cal-Neva to maintain the Resort is to use proceeds from the Stipulations, ever-increasing the amount of Hall's secured claim. Without a source of income other than further draws against Hall's secured claim, the Membership Interests continue to lose value and Ladera's interest in that collateral is not adequately protected.

The issues presented by New Cal-Neva's lack of revenue generation are compounded by the fact that New Cal-Neva has not identified a plan or realistic timeframe for exiting Chapter 11, deteriorating the value of Ladera's security interest in the Membership Interests without any adequate protection. A collection of parties both related and unrelated to New Cal-Neva did file a Chapter 11 plan and disclosure statement, however, the "Busick" plan is opposed by New Cal-Neva and, to borrow New Cal-Neva's term, that plan is as of the date of this filing "skeletal", at best. The disclosure statement drew eleven (11) objections and joinders thereto, including objections from Hall, Ladera, Penta, the Committee and New Cal-Neva objecting to, among other things, the utter lack of any evidence of the alleged plan funder's ability, or commitment to perform under that plan, leaving Hall and all other parties in interest without any realistic timeframe within which to anticipate a restart of the substantial work yet to be done on the

Resort. The court denied approval of that disclosure statement on February 2.

The Debtor has now filed a plan and disclosure statement, as well. However, that plan leaves the treatment of secured creditors to be negotiated, incorrectly states the amount of the secured debt, substantially understates the amount of the cure required for the lenders at only $100,000 each, and relies upon Mayer Financial, who acknowledges that they have not started the due diligence that they would need to compete before committing any money to the Plan.

Next, cause exists because the market has spoken with respect to the value of the Resort. As stated above, the Sale Procedures Order, the Transaction Notice and the Bidding Procedures required Qualified Bidders to submit a Qualified Bid for the purchase or financing of the Resort on or before February 15, 2017, at noon (PT) which was the Bid Deadline. According to CBRE, New Cal-Neva's broker, the sale process involved the solicitation of over 1,600 potential purchasers, execution of 70 confidentiality agreements, due diligence by 10 prospective bidders, the submission of financial information by 9 prospective bidders and the receipt of only 4 non-qualifying bids. In fact, the highest bid received was less than the secured debt against the Resort. Because New Cal Neva has no equity in the Resort, the Membership Interests, which are based solely on the value of New Cal-Neva's equity in the Resort, continue to deteriorate and lose value.

Exacerbating these issues are serious concerns related to New Cal-Neva's demonstrated inability to, at a minimum, maintain the status quo and retain whatever value exists in the Resort. A recent moisture report revealed that excessive moisture is accumulating in multiple areas of the property due to roof and waterproofing issues, which has resulted in multiple instances of elevated moisture levels, wet walls, water damage and even visible suspect mold in some locations. See e.g. Dkt. No. 406 p. 2 in New Cal-Neva case.

In the New Cal-Neva bankruptcy case, there presently is no Qualified Bidder as purchaser, no new financier, and no confirmable plan of reorganization reasonable in prospect and the same applies for the Debtor. Given that (1) cash advances from Hall under the Stipulations are New Cal-Neva's only source of funds to preserve the Resort; (2) the value of the Resort has already declined, and is at imminent risk of further declining, due to water intrusion and resulting

damage; (3) New Cal-Neva has not generated any significant revenue post-petition; (4) neither New Cal-Neva nor the Debtor has a prospect of generating significant revenue for the foreseeable future, and (5) a vetting of the marketplace failed to yield a Qualified Bid.

Here, cause exists because neither the Debtor nor New Cal-Neva is making adequate protection payments to Ladera. In the meantime, as discussed above, the Resort is losing value as it is non-operational, is not producing any significant revenue, and requires extensive renovations before it can become operational. Furthermore, New Cal-Neva's authority to use cash collateral (and Hall's funding of property expense advances) as to the Resort will cease at the end of April 2017, and Ladera is informed and believes that New Cal-Neva has no source of funds to fund necessary expenses to secure and maintain the Resort after April 2017. Finally, Hall has filed a Motion for Relief from the automatic stay with respect to the Resort.

As New Cal-Neva's primary asset deteriorates and loses value, Ladera's collateral herein (the Debtor's Membership Interests in New Cal-Neva) correspondingly lose their value.

Ladera requires relief from the automatic stay to foreclose on the Debtor's Membership Interests so that it can begin to negotiate with parties in interest in an ownership capacity, especially if Hall is successful in obtaining relief from the automatic stay with respect to the Resort.

**II.     Relief from the Stay is Proper Under Section 362(d)(2).**

Pursuant to Section 362(d)(2) of the Bankruptcy Code, relief from the automatic stay may be granted upon a showing that "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." The party seeking relief has the burden of proof on the issue of equity, and the party opposing relief has the burden of proof on all other issues, including the necessity of the property for an effective reorganization. 11 U.S.C. §362(g).

**A. Debtor Has No Equity in the New Cal-Neva Membership Interests**

Here, it is clear that the Debtor has no equity in its Membership Interests in New Cal-Neva. Although the Debtor listed a value of $10,700,000 for the Membership Interests, that value was an estimate based primarily upon Debtor's valuation of the Resort, New Cal-Neva's primary

-10-                    MOTION FOR RELIEF FROM AUTOMATIC STAY

asset, and its belief that there was equity in that asset.

As established by the failed attempted sale in the New Cal-Neva bankruptcy case and the secured claims filed in that case, the Resort has no equity above and beyond its secured debt. Ladera is informed and believes that no qualified bids were received in the New Cal-Neva sale by the applicable bid deadline, and is informed and believes that the highest bid received following the solicitation of over 1,600 potential purchasers was less than the collective $44 million amount owed to secured creditors. In addition, the Resort is non-operational, is not producing any significant revenue, and requires extensive renovations. Based upon the above, it seems clear that a sale of the Resort would not yield value above and beyond the secured claims against it.

If New Cal-Neva's primary asset has no equity, then Debtor's interests in New Cal-Neva have no, or very little, value. This is especially true if the Court in the New Cal-Neva case grants Hall's pending Motion for Relief, and Hall forecloses on the Resort. Because the Debtor's interests in New Cal-Neva secure a $7.4 million debt to Ladera, which debt far exceeds any value of the interests, there is no equity in such interests available to the Debtor.

**B. The New Cal-Neva Membership Interests are Not Necessary to Debtor's Effective Reorganization.**

The Debtor cannot establish that the Membership Interests are necessary for an "effective" reorganization. "Effective" reorganization requires "not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means…that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988) (italics in original). To meet this burden, the Debtor must "do more than manifest unsubstantiated hopes for a successful reorganization." *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 577 (5th Cir. 1991). "The cases are numerous in which § 362(d)(2) relief has been provided within less than a year from the filing of the bankruptcy petition…And while the bankruptcy courts demand less detailed showings during [the debtor's exclusive period], even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief."

*Timbers of Inwood Forest Associates, Ltd.* 44 U.S. at 376 (citing numerous cases).

This "effective reorganization" standard exists to protect creditors from ongoing harm when there is no reasonable likelihood of reorganization.

Here, the Debtor cannot establish that there is a reasonable likelihood that it will be able to confirm a reorganization plan at all, much less within a reasonable time. Currently, there are two competing plans in this case: one plan filed by creditor Leslie P. Busick, et al ("Busick Plan"), and another plan recently filed by the Debtor ("Debtor's Plan").

As discussed above, the Busick Plan and the Debtor's Plan in the New Cal-Neva case suffer from fatal deficiencies, including failure to property treat the Lenders claims and lack of feasibility. The Debtor and New Cal-Neva will not be able to satisfy the "fair and equitable treatment" test with respect to Ladera's claim. See 11 U.S.C. § 1129(b)(2)(A). Under the most common situation, that test will permit Ladera to retain its liens on the Resort and related assets and will require New Cal-Neva to provide a stream of payment to Ladera with a present value equal to the value of the Collateral and in a total aggregate amount equal to the amount of Ladera's secured claim. See 11 U.S.C. 1129(b)(2)(A)(i). If Ladera, however, were to make the election under Bankruptcy Code section 1111(b), the aggregate amount of payments must equal not less than $8.217 million (and growing). Given the size of Ladera's secured claim, and Hall's secured claim, New Cal-Neva would be required to provide Ladera with substantial monthly payments, and the case law will require an interest rate that takes into account the appropriate "risk premium" for that debtor. Given New Cal-Neva's inability to generate any revenue and the fact that it will be unable to generate any revenue for the forseeable future, it likely will be impossible for New Cal-Neva to propose a plan that complies with the fair and equitable requirements discussed above.

Objections to the Busick Plan for the Debtor, as the holding company, have also been filed, including an objection by Ladera because, *inter alia*, the proposed disclosure statement and plan failed to acknowledge or provide treatment of Ladera's secured Claim in the case and because of lack of feasibility due to defects in the New Cal-Neva Plan. See Dkt. No. 143. Because of these failures, the proposed Busick Plan cannot be confirmed.

The Debtor just filed its Debtor's Plan and accompanying disclosure statement on February 27, 2017, and as such, objections to the same are not yet due. Nevertheless, the plan purports to be a joint plan of reorganization for both Cal Neva and New Cal-Neva. That plan also relies on the New Cal-Neva Plan for its feasibility. As discussed above the Debtor's New Cal-Neva plan is not confirmable and does not have a committed funding source.

Moreover, if Hall is granted relief from stay and forecloses, this Debtor's Plan will not be feasible or confirmable.

Therefore, there is no reasonable likelihood of a successful reorganization within a reasonable time. As such, the Court should grant Ladera relief from stay pursuant to 11 U.S.C. § 362(d)(2).

**III.     The 14-day Stay of Bankruptcy Rule 4001(a)(3) Should be Waived.**

As discussed above, Hall has a pending Motion for Relief from the automatic stay in the New Cal-Neva case with respect to New Cal-Neva's primary asset. If that motion is granted, Ladera will require immediate relief so that it can foreclose on the Debtor's Membership Interests in New Cal-Neva and begin to negotiate with parties in interest in an ownership capacity.

Accordingly, if relief from the automatic stay is granted herein, the Court should waive the 14-day stay of Bankruptcy Rule 4001(a)(3) to allow Ladera to avoid any further damage or delay in exercising its rights and remedies under the Loan Agreements and applicable state law.

WHEREFORE, based upon all of the above, Ladera respectfully requests that this Court enter an order as follows:

1.     Granting relief from the automatic stay to allow Ladera to exercise its rights and remedies with respect to its collateral (Debtor's 100% Membership Interests in New Cal-Neva) under the Loan Agreements and applicable state law;

2.     Waiving the 14-day stay set forth in Bankruptcy Rule 4001(a)(3); and

////
////
////
////

-13-     MOTION FOR RELIEF FROM AUTOMATIC STAY

3.  For such other and further relief as is just and appropriate in the circumstances of this case.

Dated:  March 1, 2017

>                    FELDERSTEIN FITZGERALD
>                    WILLOUGHBY & PASCUZZI LLP
>
>                    By: */s/ Jason E. Rios*_____
>                         JASON E. RIOS
>                         Attorneys for Ladera Development, LLC