1

HOLLY E. ESTES, ESQ.
Nevada Bar No. 11797

2

ESTES LAW
505 Ridge Street

3

Reno, Nevada  89501
Telephone (775) 786-4579

4

Facsimile (775) 786-3066
*Email: hestes@esteslawpc.com*

5

6

Attorney for Creditors/Plan Proponents,
Leslie P. Busick, David Marriner,
Charles and Judith Munnerlyn,

7

John Paye, Trustee of Paul and Evy Paye, LLC

8

9

UNITED STATES BANKRUPTCY COURT

10

DISTRICT OF NEVADA

11

—ooOoo—

12

In Re:

Case No. BK-N-16-51281-GWZ
Chapter 11

13

CAL-NEVA LODGE, LLC,

14

Debtor.

Hearing Date:   August 16, 2017
Hearing Time:  1:00 p.m.

15

16

_____/

17

18

19

20

# CREDITORS' FOURTH AMENDED

21

# JOINT DISCLOSURE STATEMENT

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

1. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.1   Purpose of the Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.2   Acceptance and Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.3   Confirmation Without Acceptance By All Impaired Classes . . . . . . . . . . . 3

    1.4   Disclaimer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2. INFORMATION REGARDING THE CHAPTER 11 ESTATE. . . . . . . . . . . . . . . 3

    2.1   Background of the Debtor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.2   Ownership of Debtor and Its Management. . . . . . . . . . . . . . . . . . . . . . . . . 4

    2.3   Description of the Resort and Related Assets. . . . . . . . . . . . . . . . . . . . . . . 4

    2.4   Reasons for the Chapter 11 Filings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

3. DEVELOPMENTS DURING THE COURSE OF THIS
   CHAPTER 11 CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    3.1   The Cal Neva Schedules and Statement of Financial Affairs . . . . . . . . . . 7

    3.2   The Cal Neva Bar Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    3.3   The Employment of Cal Neva Professionals and Interim Compensation . . 7

    3.4   Transfer of Venue to Reno, Nevada . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    3.5   The Ladera Motion for Relief from the Automatic Stay. . . . . . . . . . . . . . . 8

    3.6   The U.S. Trustee's Motion to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    3.7   The New Cal-Neva Schedules and Statement of Financial Affairs.. . . . . . 8

    3.8   Use of Cash Collateral and DIP Financing. . . . . . . . . . . . . . . . . . . . . . . . . 8

    3.9   The New Cal-Neva Claims Bar Date.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    3.10   Appointment of New Cal-Neva Unsecured Creditors' Committee.. . . . . . 8

    3.11   Employment of New Cal-Neva Professionals. . . . . . . . . . . . . . . . . . . . . . . 9

    3.12   Approval of Professional Fees.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    3.13   Transfer of New Cal-Neva Case to Reno, Nevada. . . . . . . . . . . . . . . . . . . 9

    3.14   The Hall Motion For Relief from the Automatic Stay.. . . . . . . . . . . . . . . . 9

    3.15   Mayer Expense Reimbursement Motion. . . . . . . . . . . . . . . . . . . . . . . . . . 10

ESTES LAW
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

i

E:\Cal-Neva Cases\Plan & DS (Cal Neva)\DS (4th Amd) Cal-Neva 081517Tree.wpd

3.16   U.S. Trustee's Motion to Dismiss New Cal-Neva Case. . . . . . . . . . . . . . 10

4.   PENDING LITIGATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4.1   Cal Neva Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4.2   New Cal-Neva Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5.   DESCRIPTION OF ASSETS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5.1   Assets of New Cal-Neva. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5.2   Assets of Cal Neva . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5.3   Appraisal of Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5.4   Potential Claims for Recovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

6.   DESCRIPTION OF DEBTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

6.1   Administrative Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

6.2   Priority Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

6.3   Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

6.4   Unsecured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

7.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES . . . . . . . . . . . . . . 13

8.   SUMMARY OF CREDITORS' PLAN OF REORGANIZATION . . . . . . . . . . 14

8.1   Classification of Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8.2   Unimpaired Classes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8.3   Treatment of Claims and Interests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8.3.1   Class 1 (Placer County). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8.3.2   Class 2 (Hall). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8.3.3   Class 3 (Ladera). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8.3.4   Class 4 (Penta). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8.3.4.1 Treatment of Classes 1,2 and 3. . . . . . . . . . . . . . . . . . . . . . 15

8.3.5   Class 5 (Subcontractors). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

8.3.6   Class 6 (Unsecured Creditors of New Cal-Neva). . . . . . . . . . 17

8.3.7   Class 7 (Unsecured Creditors of Cal Neva). . . . . . . . . . . . . . 17

8.3.8   Class 8 (Capital One Bank). . . . . . . . . . . . . . . . . . . . . . . . . . 17

ESTES LAW
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

8.3.9  Class 9 (Membership Interest in New Cal-Neva).. . . . . . . . . . . . . 17

8.3.10 Class 10 (Membership Interest in Cal Neva). . . . . . . . . . . . . . . . 18

8.4  Treatment of Unclassified Claims.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

8.4.1  Administrative Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

8.4.2  Administrative Claims Bar Date.. . . . . . . . . . . . . . . . . . . . . . . . . 18

8.4.3  Fees to the United States Trustee.. . . . . . . . . . . . . . . . . . . . . . . . . 18

8.4.4  Priority Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

8.5  Executory Contracts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

8.6  Means of Implementing the Plan.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

8.6.1  New Financing to Fund Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

8.6.2  Vesting of Assets of the Estates.. . . . . . . . . . . . . . . . . . . . . . . . . . 21

8.6.3  Disbursing Agent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

8.6.4  Completion of Improvements.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

8.6.5  Post-Confirmation Management of the Debtor. . . . . . . . . . . . . . . 22

8.6.6  No Election Under 1111(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

8.6.7  Exemption from Certain Taxes and Fees. . . . . . . . . . . . . . . . . . . . 23

9.  POST-CONFIRMATION FINANCIAL CONDITION OF THE DEBTOR.. . . . 23

10.  ALTERNATIVES TO THE CREDITORS' PLAN.. . . . . . . . . . . . . . . . . . . . 23

10.1  Tax Consequences of the Creditors' Plan. . . . . . . . . . . . . . . . . . . . . . . . . 24

10.2  Liquidation Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

11.  CONFIRMATION OF THE CREDITORS' PLAN.. . . . . . . . . . . . . . . . . . . . 24

11.1  Confirmation of the Creditors' Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

11.2  Objections to Confirmation of the Creditors' Plan. . . . . . . . . . . . . . . . . . 24

**ESTES LAW**
**505 Ridge Street**
**Reno, Nevada  89501**
**(775) 786-4579**

E:\Cal-Neva Cases\Plan & DS (Cal Neva)\DS (4th Amd) Cal-Neva 081517 res.wpd

iii

## 1.    **INTRODUCTION**

The Creditors' Fourth Amended Joint Disclosure Statement (hereinafter the "Disclosure Statement") is provided to creditors in connection with the solicitation of acceptances of the Creditors' Third Amended Joint Plan of Reorganization (the "Creditors' Plan"), proposed by Leslie P. Busick, David Marriner, Charles and Judith Munnerlyn, and John Paye, Trustee of Paul and Evy Paye, LLC, (the "Proponents") filed on August 15, 2017, or any subsequent amended plan of reorganization. The New Cal-Neva Lodge, LLC ("New Cal-Neva") reorganization case is under Chapter 11 of the United States Code, and was filed on **July 28, 2016**, and is currently pending in the United States Bankruptcy Court for the District of Nevada as **Case No. BK-N-16-51282-GWZ** (the "New Cal-Neva Case"). The Cal Neva Lodge, LLC ("Cal Neva") reorganization case is under Chapter 11 of the United States Code and was filed on July 28, 2016, and is currently pending in the United States Bankruptcy Court for the District of Nevada as **Case No. BK-N-16-51281-GWZ** (the "Cal Neva Case"). The Creditors' Plan provides for the treatment of claims of creditors and interests of the equity security holders in both the Cal Neva Case and the New Cal-Neva Case.[1, 2]

The objective of a Chapter 11 bankruptcy case is to obtain Bankruptcy Court approval of a plan of reorganization. This process is referred to as confirmation of a plan. A plan describes in detail (and in language appropriate for a legal contract) the means for satisfying the claims against, and equity interests in, a Debtor. After a plan has been filed, the holders of such claims and equity securities that are "impaired" (a term defined in Bankruptcy Code Section 1124 and discussed in detail below) are permitted to vote to accept or reject the plan. Before a Debtor or other plan proponent can solicit acceptances of a plan, Bankruptcy Code Section 1125 requires the Proponent prepare a disclosure statement containing adequate

---

[1] Capitalized terms not otherwise defined herein will have the same meaning as are ascribed to such terms in the Creditors' Third Amended Joint Plan of Reorganization which is filed contemporaneously herewith.

[2] An equity security of the Debtor as the term is defined in Section 101(16) of the Bankruptcy Code and includes any membership interest in the Debtor.

1   information of a kind, and in sufficient detail, to enable those parties entitled to vote on the
2   plan to make an informed judgment about the plan and whether they should accept or reject
3   the plan.

4   ## 1.1    Purpose of the Disclosure Statement

5           The purpose of this Disclosure Statement is to ensure that claimants have adequate
6   information to enable each class to make an informed judgment about the Creditors' Plan.
7   The assets and liabilities of the Debtor are summarized herein.  To the extent the information
8   contained in this Disclosure Statement may be inconsistent with the Debtors' Schedules and
9   Statement of Financial Affairs in each bankruptcy case, this Disclosure Statement shall
10  supersede such Statements and Schedules (as may have been amended).

11          This Disclosure Statement describes the business background and operating history
12  of the Debtor before the filing of the case.  It also summarizes certain significant events that
13  have taken place during the case and describes the terms of the Creditors' Plan, which
14  divides creditor claims and the interests of shareholders into classes and provides for the
15  satisfaction of allowed claims and interests.

16          The Court will set a time and date as the last day to file acceptances or rejections of
17  the Creditors' Plan.  Thereafter, a hearing on confirmation of the Creditors' Plan will be held
18  in the United States Bankruptcy Court for the District of Nevada, located at the U.S. Federal
19  Building & Courthouse, 300 Booth Street, Reno, Nevada.  Creditors may vote on the
20  Creditors' Plan by filling out and mailing a special form of ballot.  The form of ballot and
21  special instructions for voting will be forthcoming upon approval of the Disclosure Statement
22  by the Court.  Creditors are urged to carefully read the contents of this Disclosure Statement
23  before making a decision to accept or reject the Creditors' Plan.

24  ## 1.2    Acceptance and Confirmation

25          In order for the Creditors' Plan to be confirmed, each impaired class of claims or
26  interests must accept the Creditors' Plan, except as set forth below.  In order for the
27  Creditors' Plan to be deemed accepted, a majority in number and two-thirds in dollar amount
28  of the claims of each class of creditors impaired under the Creditors' Plan of those that

1  actually vote, must vote for acceptance of the Creditors' Plan.  Holders of claims who fail

2  to vote are not counted as either accepting or rejecting the Creditors' Plan.

3      Classes of claims that are not "impaired" under the plan are deemed to have accepted

4  the Creditors' Plan.  Acceptances of the Creditors' Plan are being solicited only from those

5  persons who hold claims or interests in impaired classes.  A class is "impaired" if the legal,

6  equitable or contractual rights attaching to the claims or interests of that class are modified,

7  other than by curing defaults and reinstating maturities, or by payment in full in cash.  In this

8  case all creditors are impaired, and therefore voting is required.

9      **1.3**    **Confirmation Without Acceptance By All Impaired Classes**

10      The Bankruptcy Code contains provisions for confirmation of a plan even if the

11  Creditors' Plan is not accepted by all impaired classes, as long as at least one impaired class

12  of claims has accepted the Creditors' Plan.

13      **1.4**    **Disclaimer**

14      No representations concerning the Debtors are authorized other than as set forth in this

15  Disclosure Statement.  Any representations or inducements made to secure your acceptance

16  or rejection of the Creditors' Plan other than as contained herein have not been authorized

17  and should not be relied upon by you in making your decision, and such additional

18  representations and inducements should be reported to counsel for the Proponents, who in

19  turn should deliver such information to the Court for such action as may be deemed

20  appropriate.  The information contained herein has not been subjected to a certified audit.

21  The records kept by the Debtor and other information relied on herein are dependent upon

22  investigations and accounting performed by the Proponents and others employed by the

23  Proponents.  The Proponents are unable to warrant that the information contained herein is

24  without inaccuracy, although a great effort has been made to be accurate, and the Proponents

25  believe that the information contained herein is, in fact, accurate.

26  **2.**    **INFORMATION REGARDING THE CHAPTER 11 ESTATE**

27      **2.1**    **Background of the Debtor**

28      The Debtor, NEW CAL-NEVA LODGE, LLC ("New Cal-Neva"), commenced its

1  bankruptcy case on July 28, 2016 in the United States Bankruptcy Court for the Northern

2  District of California (the "California Bankruptcy Court"), Santa Rosa Division. On July 28,

3  2016, Cal Neva Lodge, LLC ("Cal Neva") also filed its case in the United States Bankruptcy

4  Court for the Northern District of California, Santa Rosa Division. On September 28, 2016,

5  the California Bankruptcy Court transferred the New Cal-Neva case and the Cal Neva case

6  to this Court, effective October 13, 2016. Renovations to the Property owned by New Cal-

7  Neva were commenced in July of 2014, but in December of 2015 all work ceased due to

8  disagreements with The Penta Building Group, LLC. The business has remained closed

9  since that date.

10       **2.2    Ownership of Debtor and Its Management**

11      The sole member of New Cal-Neva is Cal Neva. The manager of New Cal-Neva is

12  CR Hospitality, LLC. The members of Cal Neva are identified in **Exhibit "L"** hereto.

13       **2.3    Description of the Resort and Related Assets.**

14      (A)   <u>The Resort</u>. The New Cal-Neva's principal asset is a hotel, spa &

15  casino known as the Cal Neva Resort Hotel & Casino. The Resort is comprised of over 13.5

16  acres located along the North Shore of Lake Tahoe, stretching over two states in Crystal Bay,

17  Nevada and Kings Beach, California. The Resort includes 191 hotel guestrooms, cabins and

18  terrace rooms, a full service spa, the Frank Sinatra Showroom, the Indian Room, a casino

19  with a 17,000 square-foot gaming floor, the historic Circle Bar, a specialty restaurant, the

20  Casino bar, a terrace level family restaurant, the Boardroom & Wine Cellar, a gourmet

21  market, a kids adventure center, an outdoor pool and patio, boutiques (retail), state of the art

22  fitness facility, approximately 16,000 square feet of indoor/outdoor meeting space, parking

23  for 248 vehicles, and potentially the conversion of 28 tourist accommodation units into

24  condominiums. The Proponents' have reached an agreement for the rights to the Fairwinds

25  Estate, a lakefront estate that includes a beach and a private pier, as described in subsection

26  "C" below.

27      The Resort was originally developed in 1926, burned down in 1937, and was

28  reconstructed within approximately 30 days. After numerous owners, including Frank

1   Sinatra, Cal Neva purchased the equity in New Cal-Neva Lodge in April 2013, and New Cal-

2   Neva has owned the Resort since that date.

3         In 2014, the Debtors closed the Resort and acquired funds through loans and equity

4   to undertake a substantial redevelopment of the Resort.  Construction progressed throughout

5   2015, at which point the construction ran into difficulty for various reasons, and renovation

6   ceased.

7               (B)    The Furniture, Fixtures and Equipment.  To date, New Cal-Neva has

8   purchased most of the furniture, fixtures and equipment necessary to open and operate the

9   Resort (the "FF&E").  All FF&E for guest rooms has been purchased with the exception of

10  terrace rooms and cabins.  The FF&E is being stored off-site in Sparks, Nevada.

11              (C)    The Fairwinds Estate.  The Fairwinds Estate is located at 9898 Lake

12  Street, Kings Beach, California, which property is adjacent to the Resort.  The Fairwinds

13  Estate is comprised of a 1.7 acre lot and a 5,400 square foot house, with 7 bedrooms, 7

14  bathrooms, lake access and a multiple boat dock.  The Fairwinds Estate is encumbered by a

15  mortgage in favor of Capital One Bank.  The outstanding amount owed on the mortgage is

16  approximately $4.5 million.  In October 2014, the Fairwinds Estate was owned by 9898

17  Lake, LLC.  Paul and Evy Paye, LLC ("Paye") owned 100% of the membership interests in

18  9898 Lake, LLC.  In October 2014, Paye and the Debtors entered into an Exchange

19  Agreement whereby title to the Fairwinds Estate was to be transferred CR Lake Tahoe, LLC

20  ("CR Lake Tahoe") in exchange for Paye and Marriner Real Estate, LLC (Paye's broker)

21  receiving an equity interest in Cal Neva.  The sole member of CR Lake Tahoe is New Cal-

22  Neva.  The Debtors and Paye valued the equity in the property at the time of the Exchange

23  Agreement at $2 million.  Paye was to receive an equity interest in Cal Neva of 6.67% and

24  Marriner was to receive an equity interest of 0.65%.

25        Paye has filed an Objection to Debtors' First Amended Disclosure Statement [DE

26  204] and to the Disclosure Statement For Ladera Development, LLC [DE 182] in which Paye

27  asserts that there have been various breaches of the Exchange Agreement, including failure

28  to make payments to Capital One Bank, failure to pay utilities, failure to maintain the

1    property, failure to provide insurance for the property, failure to make payments for lease of

2    the boat dock, and an attempt to sell the membership interest to a third party. Paye also

3    asserts a right to repurchase the Property under certain terms as set forth in the Exchange

4    Agreement. Paye has stated in its objection that they intend to commence an adversary

5    proceeding for breach of contract. At this time, it is uncertain whether the Fairwinds Estate

6    is an asset of the subsidiary of New Cal-Neva.

7         (D)    Paye has agreed to the terms of the Plan proposed by the Plan Proponents, and

8    if such Plan is confirmed will not pursue litigation against the Plan Proponents.

9         **2.4    Reasons for the Chapter 11 Filings**

10        Prior to the Chapter 11 filings, Hall and Ladera made loans to New Cal-Neva to

11   finance the renovation of the Resort. The principal amount advanced by Hall was

12   approximately $22 million and the principal amount advanced by Ladera was $6 million.

13   The Hall loan is secured by a first priority deed of trust against the real property and

14   substantially all of New Cal-Neva's personal property. The Ladera loan is secured by a

15   junior deed of trust against the real property, a junior deed of trust against New Cal-Neva's

16   personal property, and the pledge of Cal Neva's membership interests in New Cal-Neva.

17   Penta was the general contractor for the renovation of the Resort. Penta asserts mechanics'

18   liens on behalf of itself and certain sub-contractors to secure claims in the range of $7.5 to

19   $9 million. Penta has commenced legal actions asserting that its mechanics' liens are senior

20   to the Hall and Ladera deeds of trust, which are pending adversary proceedings in the

21   Bankruptcy Cases. Work on the project stopped in late 2015 because the available remaining

22   funding was not sufficient to complete the renovation of the Resort. As a result, the Hall and

23   Ladera loans went into default. Hall filed and served a notice of default election to sell the

24   Real Property on March 15, 2016, and thereafter, filed and served a notice of sale of the Real

25   Property, scheduling the sale for August 1, 2016. New Cal-Neva filed its Chapter 11 case

26   on July 28, 2016 to preserve its equity in the Resort.

27   ///

28   ///

3.    **DEVELOPMENTS DURING THE COURSE OF THIS CHAPTER 11 CASE**

3.1    **The Cal Neva Schedules and Statement of Financial Affairs.**

The Debtor timely filed its Schedules of Assets and Liabilities and Statement of Financial Affairs, and duly appeared at the meeting of creditors conducted pursuant to Bankruptcy Code § 341 on July 15, 2016. The Debtor is current in the filing of its Monthly Operating Reports.

3.2    **The Cal Neva Claims Bar Date.**

The Claims bar date in the Cal Neva case was October 13, 2016.

3.3    **The Employment of Cal Neva Professionals and Interim Compensation.**

The only professionals employed in the Cal Neva case is the Debtor's legal counsel, Jeffer Mangels Butler & Mitchell LLP ("JMBM"), whose employment was approved by order of the Bankruptcy Court entered August 4, 2016, and Hartman & Hartman, whose employment was approved by order of the Bankruptcy Court entered November 28, 2016. JMBM's First Interim Application for Approval of Attorneys' Fees and Expenses was heard on February 21, 2017, at which hearing JMBM sought court approval of fees in the amount of $66,132.50 and expenses of $2,216.06, and to apply the prepetition retainer it received in the amount of $58,443.50 to such amount. The JMBM fee application was approved at the February 21, 2017 hearing.

3.4    **Transfer of Venue to Reno, Nevada.**

On August 2, 2016, The Penta Building Group, Inc. ("Penta"), the general contractor for the renovation of the Real Property, filed a Motion to Transfer Venue of the Cases to the District of Nevada (Reno) (the "Venue Motion"). The Debtors duly opposed the Venue Motion. Notwithstanding, pursuant to a tentative ruling issued by Judge Jaroslovsky, it was apparent that venue would be transferred to the Bankruptcy Court in Reno. Accordingly, the Debtors consented to a transfer of venue, and a consensual order transferring venue of the Cases from Santa Rosa to Reno was entered September 28, 2016, with the effective date of the transfer being October 13, 2016. Upon the transfer of the Cases to Reno, they were initially assigned to Bankruptcy Judge Beesley, but were later reassigned to Bankruptcy

1    Judge Zive.

2         **3.5     The Ladera Motion for Relief from the Automatic Stay.**

3         On March 1, 2017, Ladera filed a motion with the Bankruptcy Court for relief from

4    the automatic stay in the Cal Neva case, seeking an order from the Bankruptcy Court

5    allowing it to conduct a postpetition foreclosure sale of Cal Neva's membership interests in

6    New Cal-Neva.  Cal Neva opposed the motion on various grounds, including, but not limited

7    to, the membership interests are absolutely necessary to the successful reorganization of Cal

8    Neva.  A status hearing on the motion was set for May 3. 2017, and the hearing will likely

9    be continued.

10        **3.6     The U.S. Trustee's Motion to Dismiss.**

11        On March 3, 2017, the U.S. Trustee filed a motion to dismiss the Cal Neva case,

12   which motion alleges that Cal Neva is unable to confirm a Chapter 11 plan.  The motion is

13   set for status hearing on May 3, 2017, at the same time as the hearing on this Disclosure

14   Statement.  The U.S. Trustee filed a similar motion in the New Cal-Neva case.

15        **3.7     The New Cal-Neva Schedules and Statement of Financial Affairs.**

16        New Cal-Neva timely filed its Schedules of Assets and Liabilities and Statement of

17   Financial Affairs, and duly appeared and was examined at the Meeting of Creditors

18   conducted pursuant to Bankruptcy Code § 341 on September 2, 2016.  New Cal-Neva is

19   current in the filing of its Monthly Operating Reports.

20        **3.8     Use of Cash Collateral and DIP Financing.**

21        By orders entered September 19, 2016 and January 4, 2017, the Bankruptcy Court

22   approved New Cal-Neva's use of cash collateral and post-petition financing from Hall, both

23   of which are required to maintain and preserve the Property, pending completion of the

24   renovations, particularly during the winter season.

25        **3.9     The New Cal-Neva Claims Bar Date.**

26        The Claims bar date in the New Cal-Neva case was December 1, 2016.

27        **3.10    Appointment of New Cal-Neva Unsecured Creditors' Committee.**

28        An Unsecured Creditors' Committee was appointed in the New Cal-Neva case on

1   September 13, 2016.

2       **3.11    Employment of New Cal-Neva Professionals.**

3       The professionals employed in the New Cal-Neva case are (i) the Debtor's legal

4   counsel, (a) Keller & Benvenutti LLP, whose employment was approved by order of the

5   Bankruptcy Court entered August 15, 2016; (b) Hartman & Hartman, whose employment was

6   approved by order of the Bankruptcy Court entered December 5, 2016 and © JMBM as

7   special Bankruptcy Code § 327(e) counsel, whose employment was approved by order of the

8   Bankruptcy Court entered August 17, 2016; (ii) the Debtor's real estate broker, CBRE, Inc.,

9   whose employment was approved by order of the Bankruptcy entered January 6, 2017; (iii)

10  legal counsel employed by the Committee, (a) Pachulski Stang Ziehl & Jones LLP, whose

11  employment was approved by order entered November 7, 2016, and (b) Fennemore Craig,

12  P.C., whose employment was approved by order of the Bankruptcy Court entered November

13  7, 2016, and (c) the Committee's financial advisor, Province, Inc., whose employment was

14  approved by order of the Bankruptcy Court entered November 7, 2016.

15      **3.12    Approval of Professional Fees.**

16      Keller & Benvenutti's First Interim Application for Approval of Attorneys' Fees and

17  Expenses was heard by the Bankruptcy Court on February 21, 2017, at which hearing it

18  sought court approval of fees in the amount of $236,240.00 and expenses of $262.07, and to

19  apply the prepetition retainer it received in the amount of $96,500.00 to such amount. Att

20  the February 21, 2017 hearing, the Bankruptcy Court approved the Keller & Benvenutti fee

21  application.

22      **3.13    Transfer of New Cal-Neva Case to Reno, Nevada.**

23      As set forth in Section 3.4 above, the New Cal-Neva case has been transferred from

24  the U.S. Bankruptcy Court in Santa Rosa and is now pending in the Bankruptcy Court in

25  Reno along with the Cal Neva case.

26      **3.14    The Hall Motion For Relief from the Automatic Stay.**

27      Subsequent to the auction being cancelled, on February 23, 2017, Hall filed a motion

28  with the Bankruptcy Court, seeking relief from the automatic stay to foreclose on the Real

Property (the "Hall RFS Motion"). As of the date of this Disclosure Statement, the first substantive hearing on the Hall RFS Motion is set for May 3, 2017, at the same as the hearing to consider approval of this Disclosure Statement.

### 3.15   Mayer Expense Reimbursement Motion.

In connection with the investment by Mayer, New Cal-Neva sought and obtained Bankruptcy Court approval to provide Mayer with an Allowed Administrative Claim for expense reimbursement of up to $150,000, payable only on certain conditions. It is undetermined as of the date of this Disclosure Statement if Mayer will meet the conditions entitling it to expense reimbursement.

### 3.16   U.S. Trustee's Motion to Dismiss New Cal-Neva Case.

As set forth in Section 3.6 above, on March 3, 2017, the U.S. Trustee filed a motion to dismiss the Cal Neva case. The U.S. Trustee also filed a substantially similar motion in the New Cal-Nevada case, which motion is set for hearing on May 3, 2017.

### 4.   PENDING LITIGATION

#### 4.1   Cal Neva Litigation.

On its petition date, Cal Neva was a party to one lawsuit, entitled *George Stuart Yount, individually and in his capacity as Owner of George Stuart Yount IRA & Criswell Radovan, LLC, CR Cal Neva, LLC, Robert Radovan, William Criswell, Cal Neva Lodge, LLC, Powell, Coleman and Arnold LLP, David Marriner; and Marriner Real Estate, LLC,* filed in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, for breach of contract, breach of duty, fraud, negligence, conversion, and punitive damages, in connection with a $1 million loan or investment allegedly made by the plaintiff, concerning one or more of the above defendants. As to the Debtor, the litigation has been stayed since the Cal Neva petition date.

#### 4.2   New Cal-Neva Litigation.

On its petition date, New Cal-Neva was a party to three lawsuits:

The first, generally styled as *Xavier Moulin v. Criswell Radovan, LLC, New Cal-Neva Lodge, et al.*, filed in the Second Judicial District Court of the State of Nevada, in and for the

ESTES LAW
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

E:\Cal-Neva Cases\Plan & DS (Cal Neva)\DS (4th Amd) Cal-Neva 081517.wpd

10.

County of Washoe, claiming breach of contract arising out of an alleged employment agreement, which complaint seeks damages of approximately $103,000. As to New Cal-Neva, the litigation has been stayed since the New Cal-Neva petition date.

The second and third lawsuits are interrelated, and are between Penta and other holders of Mechanics' Lien Claims against Hall and New Cal-Neva, concerning lien priority between the holders of mechanics' lien claims (including Penta) and Hall. As the Real Property is situated in both California and Nevada, similar lawsuits were pending in the Superior Court of the State of California, County of Placer, and in the Second Judicial District Court of the State of Nevada, Washoe County. Since the filing of New Cal-Neva's petition, both of those state court actions were moved and otherwise transferred to the Bankruptcy Court in Reno. Since the New Cal-Neva's petition date, there has been no substantive activity in either of these cases. These cases are referred to as the "Secured Creditors' Adversary Proceedings" in the Plan.

## 5.    DESCRIPTION OF ASSETS

### 5.1    Assets of New Cal-Neva

| Description | Estimated Value |
|---|---|
| Cash on hand | $5,000.00 (estimated by Plan Proponents) |
| Real Property (as described in Section 2.3(A) above) | $35,000,000.00 (estimated by Plan Proponents, subject to appraisal) |
| Personal Property (as described in Section 2.3(B) above) | $2,000,000.00 (estimated by Plan Proponents, subject to appraisal) |
| Potential Claims for recovery | Unknown (See section 5.4 below) |
| CR Lake Tahoe, LLC (Fairwinds Estate) | $2,000,000.00 (estimated by Plan Proponents - may not be an asset based on Paye objection) |
| **Est. Value of Total Assets:** | **$39,500,000.00** |

### 5.2    Assets of Cal Neva

The sole asset of Cal Neva is its equity interest in New Cal-Neva. The value of that equity interest is subject to appraisal, as described below. That equity interest has also been pledged as collateral to Ladera.

1        **5.3    Appraisal of Property**

2        The Plan Proponents have commissioned Johnson Perkins & Associates to appraise

3    the Debtor's property, specifically the real estate and improvements, as well as the personal

4    property. The appraisal is scheduled to be completed by May 22, 2017. The appraisal report

5    is attached hereto as **Exhibit "H."**

6        **5.4    Potential Claims for Recovery**

7        The Plan Proponents believe that the previous operators of the Debtor may be liable

8    for misfeasance, malfeasance, conversion, breach of fiduciary duty, and potentially other

9    claims for relief (the "Claims For Relief"). Although the Reorganized Debtor intends to

10   investigate such matters, a decision has not yet been made on whether litigation will be

11   pursued. The legal basis and likelihood of recovery have not been analyzed, and therefore

12   the value of the litigation is impossible to determine. Furthermore, the Plan does not depend

13   upon the recovery from any litigation as any recovered proceeds will be the property of the

14   Reorganized Debtor.

15   **6.    DESCRIPTION OF DEBTS**

16       **6.1    Administrative Claims**

17       (A)    Attorneys' Fees.    The Debtors will be obligated to pay attorneys' fees

18   and costs owed to its various counsel, subject to Court approval. The Plan Proponents

19   estimate such fees to be in the range of $500,000 to $1,000,000, but as such fees continue to

20   be incurred, a more accurate statement cannot be made at this time.

21       (B)    U.S. Trustee Fees. All fees required to be paid to the U.S. Trustee have

22   been maintained current during the pendency of these cases.

23       (C)    Super-Priority Administrative Fees to Hall. Pursuant to its agreement

24   to provide sums to preserve the Property, Hall is entitled to a super-priority administrative

25   fee (which is also secured by the Property). As of this date, that fee is estimated by Hall at

26   $1,000,00, although the Proponents have not received an accounting from Hall.

27       (D)    Attorneys' Fees to Counsel for Plan Proponents.    In the event the

28   Creditors' Plan is confirmed, counsel for the Plan Proponents will be paid by the Plan

1 Proponents.

2 **6.2    Priority Claims**

3       The New Cal-Neva has scheduled against it, or has proofs of claim filed against

4 it, for priority claims as set forth in **Exhibit "A"** attached hereto.  No priority claims are

5 scheduled against, nor are any priority proofs of claim filed against Cal Neva.

6 **6.3    Secured Claims**

7       New Cal-Neva has secured claims scheduled against it, and has proofs of claims

8 identified as secured filed against it, as set forth in **Exhibit "B"** attached hereto.  Cal Neva

9 has secured claims scheduled against it and has proofs of claim filed against it as set forth

10 in **Exhibit "C"** attached hereto.

11 **6.4    Unsecured Claims**

12       New Cal-Neva has unsecured claims scheduled against it, and proofs of claim filed

13 against it as set forth in **Exhibit "D."**  Cal Neva has unsecured claims scheduled against it

14 and proofs of claim filed against it as set forth in **Exhibit "E."**

15 **7.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

16       The Debtor is a party to certain executory contracts as identified below:

17

| Contract | Description of Contract |
|---|---|
| Collaborative Design Studio | Architectural and engineering services contract |
| CR Hospitality, LLC | Operating agreement |
| NorthStar Demolition and Remediation, LP | Contracting services contract |
| Paul Duesing Partners | Design services contract |
| The Penta Building Group | Construction contract |
| Thannisch Development Services Inc. | Development consulting services contract |
| Starwood/Marriot | Franchise Agreement |
| CBRE, Inc. | Exclusive Sales Listing Agreement |
| Dixon, Michael and Sharon | Condominium Purchase Discount Agreement |
| Iverson, Brandyn | Condominium Purchase Discount Agreement |
| Jameson, Paul | Condominium Purchase Discount Agreement |

| Munnerlyn, Charles R. and Judy G. | Condominium Purchase Discount Agreement |
| Hill, Heather | Condominium Purchase Discount Agreement |
| Pacey-Willis, Lisa | Condominium Purchase Discount Agreement |

**8.    SUMMARY OF CREDITORS' PLAN OF REORGANIZATION**

**THE FOLLOWING IS A BRIEF SUMMARY OF THE CREDITORS' PLAN OF REORGANIZATION WHICH IS FILED CONCURRENTLY HEREWITH (the "Creditors' Plan"), AND SHOULD <u>NOT</u> BE RELIED UPON FOR VOTING PURPOSES.   THE SUMMARY IS NOT COMPLETE, AND CREDITORS ARE URGED TO READ THE CREDITORS' PLAN IN FULL.   A COPY OF THE CREDITORS' PLAN OF REORGANIZATION WILL BE PROVIDED TO ALL CREDITORS.    TO THE EXTENT THE FOLLOWING SUMMARY INCLUDES DEFINED TERMS, THOSE DEFINITIONS ARE INCLUDED IN THE CREDITORS' PLAN FILED CONCURRENTLY HEREWITH.   ALL CAPITALIZED TERMS HEREINAFTER HAVE THE MEANINGS SET FORTH IN THE CREDITORS' PLAN.**

**8.1    Classification of Claims and Interests**

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims and Interests.  Administrative Claims and Priority Claims of the  kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified and are excluded from the following classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.

<u>Class 1</u>: The Allowed Secured Claim of the Placer County Tax Collector.

<u>Class 2</u>: The Allowed Claim of Hall against New Cal-Neva secured by the Property, as evidenced by its promissory note, deed of trust, and related loan documents.

<u>Class 3</u>:  The Allowed Claim of Ladera against New Cal-Neva secured by the Property and the membership interest in New Cal-Neva, as evidenced by its promissory note, deed of trust, and related loan documents.

<u>Class 4</u>: The Allowed Claim of Penta against New Cal-Neva to the extent secured by a valid mechanic's lien against the Property.

<u>Class 5</u>: The Allowed Claims of Subcontractors against New Cal-Neva against the Property.

<u>Class 6</u>: The Allowed Claims of Unsecured Creditors of New Cal-Neva.

<u>Class 7</u>: The Allowed Claims of Unsecured Creditors of Cal Neva.

<u>Class 8</u>: The Allowed Secured Claim of Capital One Bank (USA), N.A.

<u>Class 9</u>: The membership interest in New Cal-Neva held by Cal Neva.

<u>Class 10</u>: The membership interests in Cal Neva.

**8.2    Unimpaired Classes**

All classes are impaired under the Plan.

**8.3    Treatment of Claims and Interests**

**8.3.1    Class 1 (Placer County).** The Allowed Secured Claim of the Placer County Tax Collector shall bear interest as allowed by statute, and shall be paid 50% on the Effective Date, and 50% 30 days thereafter.

**8.3.2    Class 2 (Hall).** The Allowed Claim of Hall (the "Hall Claim") shall be treated as set forth in §8.3.4.1 infra.  To the extent Hall holds an Allowed Administrative Claim it shall be paid as set forth in §8.3.4.1. To the extent such claim is also secured, the portion paid as an Administrative Claim shall reduce the amount of the Secured Claim.

**8.3.3    Class 3 (Ladera).** The Allowed Claim of Ladera (the "Ladera Claim") shall be treated as set forth in §8.3.4.1 infra.

**8.3.4    Class 4 (Penta).** The Allowed Claim of Penta (the "Penta Claim") shall be treated as set forth in §8.3.4.1 infra.

**8.3.4.1    Treatment of Classes 2, 3 and 4.**

(A)    <u>Secured Portion of Claims (Classes 2, 3 and 4).</u>

On or before the Effective Date a sum equal to the value of the Property (the "Property Value"), less the amount owed to the Placer County Tax

Collector, shall be deposited into a segregated escrow account under the name of the Disbursing Agent (the "Secured Creditor Fund"). The value of the Property, and thus the amount of the Secured Creditor Fund, shall be determined by appraisal evidence presented at the Confirmation Hearing. The liens of the Hall Claim, Ladera Claim (as secured by the Property) the Penta Claim (Penta, Hall, and Ladera are sometimes collectively referred to as the "Secured Creditors"), as well as the liens of all Subcontractors (to the extent not duplicative of the Penta claim), shall attach to the proceeds of the Secured Creditor Fund, and shall share in and be limited by the Secured Creditor Fund based upon: (i) the final order of priority as determined by the outcome of the Secured Creditors' Adversary Proceedings, whether by litigation or settlement, and (ii) the final order determining any claim objections filed against any of the Secured Creditors. This Plan does not determine the priority or amount of the liens of the Secured Creditors and Subcontractors. The Secured Creditor Fund will be interpled in the Bankruptcy Court, or in another court of appropriate jurisdiction should circumstances warrant or should the Bankruptcy Court abstain.

(B)     Ladera's Claim As Secured By Interest In Cal Neva Lodge.

On account of its claim secured by the membership interest in New Cal-Neva, Ladera shall be entitled to a cash disbursement on the Effective Date equal to the difference between the Property Value and the total of all Claims against New Cal-Neva (the "Equity In New Cal-Neva"). If the Equity in New Cal-Neva is less than zero, there shall be no distribution to Ladera on account of is secured interest in the membership interest of New Cal-Neva.

(C)     Deficiency Claims Of Secured Creditors.

Any of the Secured Creditors may be entitled to a deficiency claim (the "Deficiency Claims") against the Debtor, based upon: i) the amount by which the Allowed Claim exceeds the Property Value less all senior secured claims;

ii) the final outcome of the Secured Creditors' Adversary Proceedings; and iii) the final outcome of any objections to any claims of the Secured Creditors. In full and final satisfaction of the Deficiency Claim the sum of Two Hundred Thousand Dollars ($200,000) shall be distributed to the party (or parties) entitled to the Deficiency Claim, to be distributed pro rata based on the Allowed Deficiency Claim of each creditor.

### 8.3.5   Class 5 (Subcontractors)

The Allowed Claims of Subcontractors will be paid by Penta, or by the Secured Creditors Fund as set forth in §8.3.4.1, or to the extent such claims are unsecured, in accordance with the treatment of Class 6 unsecured creditors below.

### 8.3.6   Class 6 (Unsecured Creditors of New Cal-Neva)

The Allowed Claims of Unsecured Creditors shall receive a prorata distribution of the New Cal-Neva Unsecured Creditor Fund. The undisputed portion of the claim shall be paid on the Effective Date. The portion of the claim that is disputed shall be maintained in the New Cal-Neva Disputed Unsecured Claims Account and shall be paid if and when the claim is adjudicated an Allowed Claim following the Claim Objection Procedure.

### 8.3.7   Class 7 (Unsecured Creditors of Cal Neva)

The Allowed Claims of Unsecured Creditors shall receive a prorata distribution of the Cal Neva Unsecured Creditor Fund. The undisputed portion of the claim shall be paid on the Effective Date. The portion of the claim that is disputed shall be maintained in the Cal Neva Disputed Unsecured Claims Account and shall be paid if and when the claim is adjudicated an Allowed Claim following the Claim Objection Procedure.

### 8.3.8   Class 8 (Capital One Bank)

The Allowed Claim of Capital One Bank shall be cured on the Effective Date, and thereafter shall be paid as agreed. All loan documents shall remain in effect to the extent not inconsistent with this Plan.

### 8.3.9   Class 9 (Membership Interest in New Cal-Neva)

The membership interests in New Cal-Neva held by Cal Neva shall be canceled.

### 8.3.10 Class 10 (Membership Interests in Cal Neva)

The membership interests in Cal Neva shall be cancelled.

### 8.4    Treatment of Unclassified Claims

#### 8.4.1    Administrative Claims

Claims arising during the administration of both the Cal Neva bankruptcy case and the New Cal-Neva bankruptcy case are entitled to priority under Section 507(a)(1) of the Bankruptcy Code are not classified under the Plan.  Holders of such claims shall be paid in full on the latter of the Effective Date, or fifteen (15) days after entry of an order allowing the Administrative Claim. Counsel for the Plan Proponents shall be paid directly by the Plan Proponents.

#### 8.4.2    Administrative Claims Bar Date

Requests for payment of Administrative Claims must be filed and served no later than forty-five (45) days after the Effective Date. Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such Claims by such date shall be forever barred, estopped, and enjoined from asserting such claims against the Debtors, the Reorganized Debtor, or their assets or Property and such Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, may be filed and served according to applicable bankruptcy rules.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by a Final Order, including any and all Administrative Claims expressly Allowed under the Plan.

#### 8.4.3    Fees to the United States Trustee

All fees required to be paid to the United States Trustee will be paid in full upon the Effective Date of the Plan, and shall remain current until the case is fully administered, closed, converted or dismissed, whichever occurs first.  Such fees shall be paid from the Plan Fund.

#### 8.4.4    Priority Claims

Allowed Priority Claims shall bear interest prior to the Effective Date at the rate

1  specified under Nevada law, or other applicable law, and to the extent no objection has been

2  filed, shall be paid on the Effective Date.  Any objection to any Priority Claim shall be filed

3  prior to the Effective Date.

4       **8.5.   Executory Contracts**

5       The Debtor's executory contracts with various entities shall be assumed or rejected

6  as set forth below:

| Contract | Description of Contract | Treatment |
|---|---|---|
| Collaborative Design Studio | Architectural and engineering services contract | Rejected - subject to renegotiation |
| CR Hospitality, LLC | Operating agreement | Rejected |
| NorthStar Demolition and Remediation, LP | Contracting services contract | Rejected - subject to renegotiation |
| Paul Duesing Partners | Design services contract | Rejected - subject to renegotiation |
| The Penta Building Group | Construction contract | Rejected |
| Thannisch Development Services Inc. | Development consulting services contract | Rejected |
| Starwood/Marriot | Franchise Agreement | Rejected |
| CBRE, Inc. | Exclusive Sales Listing Agreement | Rejected |
| Dixon, Michael and Sharon | Condominium Purchase Discount Agreement | Rejected |
| Iverson, Brandyn | Condominium Purchase Discount Agreement | Rejected |
| Jameson, Paul | Condominium Purchase Discount Agreement | Rejected |
| Munnerlyn, Charles R. And Judy G. | Condominium Purchase Discount Agreement | Rejected |
| Hill, Heather | Condominium Purchase Discount Agreement | Rejected |
| Pacey-Willis, Lisa | Condominium Purchase Discount Agreement | Rejected |

*///*

*///*

1      **8.6**    **Means of Implementing the Plan**

2           **8.6.1  New Financing to Fund Plan**

3           The Plan will be funded by an entity to be formed between Sherman Financial

4 Group, LLC and Terramar Capital, LLC ("Newco").  Newco will provide all cash necessary

5 to fund the plan.   Sherman Financial Group, LLC ("Sherman"), Terramar Capital, LLC

6 ("Terramar"), and/or Newco will submit an earnest money deposit in the amount of

7 $2,000,000.00 into an Estes Law trust account in connection with the New Financing not

8 later than six (6) calendar days prior to the Plan Confirmation hearing.  Additionally, not later

9 than six (6) calendar days prior to the Plan Confirmation hearing, Sherman, Terramar, and/or

10 Newco will submit all materials necessary to the financial advisor employed by the unsecured

11 creditor's committee to ensure proof of funds to adequately fund the Plan.  The submission

12 of materials to the financial advisor will be subject to a confidentiality agreement subject to

13 approval by Sherman and Terramar.  On the date of the Plan Confirmation Hearing Sherman,

14 Terramar and Newco will have performed all due diligence necessary and no conditions will

15 remain.

16           Sherman is a highly experienced and active global investment company with a 15-year

17 track record of unparalleled success during a period of vast market fluctuation.  Sherman

18 specializes in the development of innovative solutions that optimize long term value.

19 Sherman's track record of successful diversification, risk management, growth and

20 performance has earned it the confidence of regulators,  lenders and investors.  Sherman

21 defines the standard for the consumer finance industry and endeavors to exceed the

22 expectations of its stakeholders.

23           The collective infrastructure of Sherman's portfolio companies  provide the unique

24 advantage of being a strong operating partner with the ability to transact in all consumer

25 finance, corporate and real estate asset classes.  The combination of Sherman's operational

26 expertise and specialized servicing platforms has made it a one-stop choice for companies

27 seeking an investor for traditionally hard to service deep value assets.  This unique

28 organizational structure has provided Sherman with a solid foundation for consistent

1  investment success.

2       Sherman, through its affiliated companies, has invested $7 billion to date and arranged

3  in excess of $3 billion in financing for portfolio companies. As a privately-held company,

4  Sherman employs a streamlined decision making process and is not constrained by

5  investment timelines and structural restrictions faced by traditional investment funds. While

6  the ability to act quickly can often be crucial to successful investing, Sherman believes that

7  patience and careful due diligence is an even more important element to success.

8                    **8.6.2  Vesting of Assets of the Estates**

9       On the Effective Date, except as otherwise provided in the Plan, all Property

10  of both of the Debtors' estates shall vest in Newco free and clear of all liens and Claims,

11  including, without limitation, all real and personal Property, all Retained Causes of Action,

12  interests, claims, chose in action, and all rights under any contracts assumed hereunder

13  (executory or otherwise), against any Person. On and after the Effective Date, Newco may

14  operate its business and use, acquire, or dispose of Property and compromise or settle any

15  Claims without supervision or approval by the Bankruptcy Court and free of any restrictions

16  of the Bankruptcy Code or Bankruptcy Rules. On the Effective Date, except as otherwise

17  provided in the Plan, all causes of action of both of the Debtors' estates shall vest in Newco

18  free and clear of all Liens and Claims. The operating agreement of Newco shall comply with

19  §1123(a) of the Bankruptcy Code.

20                    **8.6.3  Disbursing Agent**

21       The Plan Proponents shall designate a certified public accountant in Reno,

22  Nevada as disbursing agent (the "Disbursing Agent"), who shall hold all funds in a

23  segregated trust account and disburse all money to be distributed under the Plan. The

24  Disbursing Agent may employ or contract with other entities to assist in or to perform the

25  distribution of the property and shall serve without bond. All disbursements under the Plan

26  shall be made pursuant to motion, Notice and Hearing, and approval of the Bankruptcy

27  Court. The Disbursing Agent shall be entitled to reasonable compensation for his services

28  to be paid by the Proponents.

### 8.6.4   Completion of Improvements

Following confirmation of the Plan, Newco will complete all improvements necessary to bring the Property to full operation.  Newco is negotiating with Penta to complete the project, and anticipates a fully executed construction agreement prior to Plan confirmation.  The Plan Proponents anticipate a fully executed construction agreement with Penta prior to the Confirmation Hearing on the Plan.  The projections of the cost of completion are attached hereto as **Exhibit "J."**  A summary of the cost to complete the project, and the pre-opening costs is attached hereto as **Exhibit "K."**

### 8.6.5   Post-Confirmation Management of the Debtor

The post-confirmation operations of Newco will be managed by Viceroy Hotel Group, LLC ("Viceroy").  The Plan Proponents have a tentative agreement with Viceroy which is attached hereto as **Exhibit "I."**

Recognized as one of the most innovative operators on the current hotel landscape, Viceroy has magnetized contemporary travelers, the hospitality industry and lifestyle media alike with its pacesetting hotels and resorts.  With a diverse portfolio of properties, Viceroy has created a collection of distinctive luxury properties offering innovative style, unique design and advanced service in the world's most sought-after destinations.

•    Viceroy offers a range of services including:

•    Professional third-party hotel management services for owners seeking branded and unbranded operations, with a focus on luxury hotels.

•    Strategic and financial partnerships with locally based owner-developers, allowing for the maximization of core competencies.

•    Acquisition of hotels without existing management contracts in primary locations, offering upside opportunities for repositioning through advanced operational and design initiatives.

•    Development and construction of traditional hotel and resort destinations, providing a brand and operational anchor.

•    Seasoned global sales, marketing, digital and e-commerce strategies.

1 •    Professional asset management.

2 •    Design support and technical services.

3 Further information can be found on its website at viceroyhotelsandresorts.com.

4 ### 8.6.6   No Election Under 1111(b)

5 Various secured creditors have made an election under §1111(b). The Plan

6 Proponents contend that the election should not be allowed because the Property is to be

7 transferred under the Plan. The election is further prohibited because the claims of the

8 Secured Creditors are disputed pursuant to the Secured Creditors Adversary Proceedings.

9 ### 8.6.7   Exemption from Certain Taxes and Fees

10 Pursuant to Bankruptcy Code section 1146(a), any transfers of property

11 pursuant to the Plan shall not be subject to any stamp, real estate transfer, sales, use tax or

12 other similar state or local tax or governmental assessment in the United States, and the

13 Confirmation Order shall direct and be deemed to direct the appropriate sate or local

14 governmental officials or agents to forego the collection of any such tax or governmental

15 assessment and to accept for filing and recordation instruments or other documents pursuant

16 to such transfers of property without payment of any such tax or governmental assessment.

17 ## 9.    POST-CONFIRMATION FINANCIAL CONDITION OF THE DEBTOR

18 Following confirmation of the Creditors' Plan, but prior to the funding by Newco, the

19 Proponents believe that the Debtors' post-confirmation financial condition shall be as set

20 forth in **Exhibit "F"** attached hereto.

21 ## 10.    ALTERNATIVES TO THE CREDITORS' PLAN

22 The Proponent believes that the Creditors' Plan provides its creditors with the earliest

23 and greatest possible value that can be realized on their claims. In the event the Plan is not

24 confirmed, one of the following alternatives will occur: i) the Court may confirm one of the

25 two other plans proposed by other parties; ii) the Court may grant relief from the automatic

26 stay to Hall and allow it to foreclose upon the Property; iii) the Court may convert the case

27 to one under Chapter 7 of the Bankruptcy Code; or iv) the Court may dismiss the case. It

28 cannot be determined at this point which alternative is more likely.

1    The Plan Proponents and Northwind anticipate that all due diligence and conditions

2  to the Plan will be satisfied by May 26, 2017. The sum of $1,000,000.00 has been deposited

3  into the trust account of the Law Offices Of Alan R. Smith.

4    **10.1    Tax Consequences of the Creditors' Plan**

5    The Proponent believes that there are no federal income tax consequences peculiar to

6  its Creditors' Plan. EACH HOLDER OF A CLAIM IS STRONGLY URGED TO

7  CONSULT WITH HIS/HER TAX ADVISOR REGARDING THE FEDERAL, STATE,

8  LOCAL AND FOREIGN TAX CONSEQUENCES TO HIM/HER OF THE CREDITORS'

9  PLAN.

10    **10.2    Liquidation Analysis**

11    Should the Debtor be forced to terminate its business operations or convert its case

12  to Chapter 7 and have a trustee conduct the liquidation of its assets, Proponent estimates that

13  such a liquidation will result in distributions as set forth in **Exhibit "G"** attached hereto.

14  **11.    CONFIRMATION OF THE CREDITORS' PLAN**

15    **11.1    Confirmation of the Creditors' Plan**

16    Pursuant to Section 1128(a) of the Bankruptcy Code, the Bankruptcy Court will

17  conduct a hearing regarding confirmation of the Creditors' Plan at the United States

18  Bankruptcy Court, 300 Booth Street, Reno, Nevada 89509, pursuant to separate notice

19  provided to creditors and interested parties.

20    **11.2    Objections to Confirmation of the Creditors' Plan.**

21    Section 1128(b) provides that any party-in-interest may object to confirmation of a plan. Any

22  objections to confirmation of the Creditors' Plan must be in writing, must state with specificity the

23  grounds for any such objections and must be filed with the Bankruptcy Court and served upon the

24  following parties so as to be received on or before the time fixed by the Bankruptcy Court:

25    Counsel for Creditor:    Holly E. Estes
                                ESTES LAW
26                              505 Ridge Street
                                Reno, NV 89501
27                              Telephone: (775) 786-4579
                                Facsimile: (775) 786-3066
28

1    For the Creditors' Plan to be confirmed, the Creditors' Plan must satisfy the requirements stated in

2    Section 1129 of the Bankruptcy Code.

3          **DATED** this 15th day of August, 2017.

4                                              ESTES LAW

5                                    By:_____*/s/ Holly E. Estes*_____
                                         HOLLY E. ESTES, ESQ.
6                                        Attorney for Plan Proponents

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28