HOLLY E. ESTES, ESQ.
Nevada Bar No. 11797
ESTES LAW
505 Ridge Street
Reno, Nevada 89501
Telephone (775) 786-4579
Facsimile (775) 786-3066
*Email: hestes@esteslawpc.com*

Attorney for Creditors/Plan Proponents,
Leslie P. Busick, David Marriner,
Charles and Judith Munnerlyn,
John Paye, Trustee of Paul and Evy Paye, LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

—ooOoo—

| | |
|---|---|
| In Re: | Case No. BK-N-16-51281-GWZ<br>Chapter 11 |
| CAL-NEVA LODGE, LLC, | |
| Debtor. | D.S. Hearing Date: August 16, 2017<br>D.S. Hearing Time: 1:00 p.m. |
| _____/ | Plan Hearing Date: TBD |

# CREDITORS'
# THIRD AMENDED JOINT
# PLAN OF REORGANIZATION

# TABLE OF CONTENTS

1.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.  DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3.  CLAIMS AND INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    3.1   Classification of Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    3.2   Unimpaired Classes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    3.3   Treatment of Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.3.1   Class 1 (Placer County) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.3.2   Class 2 (Hall) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.3.3   Class 3 (Ladera) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.3.4   Class 4 (Penta) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.3.4.1 Treatment of Classes 2, 3 and 4 . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.3.5   Class 5 (Subcontractors) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        3.3.6   Class 6 (Unsecured Creditors of New Cal-Neva) . . . . . . . . . . . . . . 9

        3.3.7   Class 7 (Unsecured Creditors of Cal Neva) . . . . . . . . . . . . . . . . . . 9

        3.3.8   Class 8 (Capital One Bank) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3.3.9   Class 9 (Membership Interest in New Cal-Neva) . . . . . . . . . . . . . . 9

        3.3.10 Class 10 (Membership Interest in Cal Neva) . . . . . . . . . . . . . . . . . 9

4.  TREATMENT OF UNCLASSIFIED CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . 9

    4.1   Administrative Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    4.2   Administrative Claims Bar Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    4.3   Fees to the United States Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    4.4   Priority Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5.  EXECUTORY CONTRACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

6.  MEANS OF IMPLEMENTING THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . 11

    6.1   New Financing to Fund Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    6.2   Vesting of Assets of the Estates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    6.3   Disbursing Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

|   |   |     |                                               |     |
|---|---|-----|-----------------------------------------------|-----|
|   |   | 6.4 | Completion of Improvements                    | 13  |
|   |   | 6.5 | Post-Confirmation Management of the Debtor.   | 13  |
|   |   | 6.6 | No Election Under 1111(b)                     | 14  |
|   |   | 6.7 | Exemption from Certain Taxes and Fees         | 14  |
|   | 7 |     | FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN.  | 14  |
|   | 8.|     | INJUNCTION                                    | 14  |
|   | 9.|     | MISCELLANEOUS PROVISIONS..                    | 15  |
|   |10.|     | RETENTION OF JURISDICTION.                    | 15  |
|   |11.|     | MODIFICATION OF PLAN.                         | 16  |

1. **INTRODUCTION**

Debtors, NEW CAL-NEVA LODGE, LLC (hereinafter "New Cal-Neva") and CAL NEVA LODGE, LLC (hereinafter "Cal Neva"), filed their petitions for relief under Chapter 11 of the Bankruptcy Code on **July 28, 2016.** This Creditors' Third Amended Joint Plan of Reorganization (the "Plan") is a proposal by creditors Leslie P. Busick, David Marriner, Charles and Judith Munnerlyn, and John Paye, Trustee of Paul and Evy Paye, LLC, (the "Proponents" or "Plan Proponents")[1] to creditors to resolve the debts owed on the date of filing the petition. This Plan is a joint plan of reorganization for treatment of the creditors of Cal Neva and New Cal-Neva.

The Plan must receive creditor approval and the Court must find that it meets the requirements of the law in order to be confirmed. If this Plan is not confirmed, then the Court may allow:

(A)  The case to be dismissed;

(B)  The Debtors or others to draft another plan; or

(C)  The case to be converted to a Chapter 7 proceeding, with the assets of the Debtor being sold in liquidation and the proceeds distributed in accordance with the Bankruptcy Code.

Creditors are advised that the Proponents have prepared and filed a Disclosure Statement that provides information about the Debtors and their past operations.

2. **DEFINITIONS**

Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. Any capitalized term not defined herein that is defined in the Bankruptcy Code shall have the meaning ascribed to it in the Bankruptcy Code. Unless the context requires otherwise, the following words and phrases shall have the meanings set forth below when

---

[1] This provision may be modified to add additional Proponents.

used in this Plan:

(A) **"Administrative Claim(s)."** Claims arising during the administration of the Chapter 11 case entitled to priority under Section 507(a)(1) of the Bankruptcy Code. As required by the Bankruptcy Code, holders of such Allowed Administrative Claims against the Debtor shall receive cash in the amount of such Allowed Claim on the Effective Date.

(B) **"Allowed Claim**." This term will refer to and mean every claim: (i) as to which a proof of claim has been filed with the Court within the time fixed by the Court or, if such claim arises from the Debtors' rejection of an unexpired lease or other executory contract, within thirty (30) days after the Effective Date of the Plan, or (ii) which is scheduled as of the Confirmation Date of the Plan in the schedules filed by the Debtors or amended by the Debtors as of said date, and is liquidated in amount and undisputed; and in either of the above events, as to which no objection to allowance of such claim or request for subordination thereof has been filed within any applicable time period fixed by the Court or as to which an order allowing such claim and establishing its priority has become final and non-appealable. An allowed secured claim shall include all accrued interest and attorneys fees, to the extent the same are allowable under 11 U.S.C. § 506, and to the extent attorneys fees are reasonable or are approved by the Bankruptcy Court after notice and hearing.

(C) **"Allowed Priority Claims."** This term means Allowed Claims entitled to priority in accordance with Section 507(a)(2) through (7) of the Code.

(D) **"Bankruptcy Case."** This term shall mean the pending Chapter 11 cases of New Cal-Neva or Cal Neva as indicated. "Bankruptcy Cases" shall mean the cases of both Cal Neva and New Cal-Neva.

(E) **"Bankruptcy Code" or "Code."** This term means the Bankruptcy Code of 1978, as codified in Title 11 of the United States Bankruptcy Code by Public Law 95-598, including all amendments thereof and thereto.

(F) **"Bankruptcy Court."** This term means the United States Bankruptcy Court for the District of Nevada, Reno, or such other court as has jurisdiction of these Chapter 11 cases.

(G) **"Cal-Neva."** This term shall mean Cal-Neva Lodge, LLC, a Nevada limited liability company and the debtor and debtor in possession in Case No. BK-N-16-51281-GWZ.

(H) **"Cal-Neva" Unsecured Creditor Fund."** This term shall mean the sum of Five Hundred Thousand Dollars ($500,000) to be used to pay unsecured creditors in the Cal-Neva Bankruptcy Case.

(I) **"Capital One Bank."** This term shall mean Capital One Bank (USA), N.A.

(J) **"Cases"** or **"Both Cases."** This term shall mean the New Cal-Neva bankruptcy case and the Cal-Neva bankruptcy case.

(K) **"Claim."** This term means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(L) "**Claims For Relief."** This term shall mean all claims for relief held by the Debtor as generally described in §5.4 of the Disclosure Statement.

(M) **"Claims Objection Procedure"** This term shall mean the procedure set forth in Fed.R.Bankr.P. 3007, Local Rule of Bankruptcy Procedure 3007, and 11 U.S.C. §502.

(N) **"Confirmation Date."** This term refers to and shall mean the date on which the Court enters its Order confirming the Plan, as the same may be subsequently amended.

(O) **"Confirmation Hearing."** This term shall mean the hearing or hearings in which the Bankruptcy Court considers confirmation of the Plan.

(P) **"Debtor."** This term shall mean NEW CAL-NEVA LODGE, LLC, the Chapter 11 Debtor in Case No. BK-N-16-51282-GWZ.

(Q) **"Disclosure Statement."** Disclosure Statement means the Creditor's Fourth Amended Joint Disclosure Statement filed by the Proponents, as the same may be amended, and as approved by the Bankruptcy Court.

1  (R)  **"Disputed Unsecured Claims Account."**  This term shall mean the portion of the Unsecured Creditor Fund held in trust on account of and for the benefit of the disputed portion of any unsecured creditors.

(S)  **"Effective Date."**  This term shall mean the date which is fifteen (15) days following the Confirmation Date, or if the same falls upon a weekend or legal holiday, then the next business day. Disbursements to be made on the "Effective Date" may be made up to five(5) business days following the Effective Date.

(T)  **"Hall."**  This term shall mean Hall CA-NV, LLC.

(U)  **"Ladera."**  This term shall mean Ladera Development, LLC.

(V)  **"Penta."**  This term shall mean The Penta Building Group, LLC.

(W)  **"Membership Interest in New Cal-Neva."**  This term shall mean the membership interest of New Cal Neva held by Cal-Neva.

(X)  **"Membership Interests in Cal-Neva."**  This term shall mean the membership interests of all members of Cal-Neva.

(Y)  **"New Cal-Neva."**  This term means New Cal-Neva Lodge, LLC, a Nevada limited liability company and the debtor and debtor in possession.

(Z)  **"New Cal-Neva Unsecured Creditor Fund."**  This term shall mean the sum of One Million Five Hundred Thousand Dollars ($1,500,000) to be used to pay unsecured creditors in the New Cal-Neva Bankruptcy Case.

(AA)  **"New Financing."**  This term shall mean a net sum of approximately $70M to be provided by Newco to be used to fund the Plan and renovations on the Property.

(BB)  "**Notice and Hearing."**  This term shall mean such notice as required by FRBP 2002 and Local Rule of Bankruptcy Procedure 2002, a hearing properly conducted by the Bankruptcy Court, and entry of an order granting the relief sought.

(CC)  "**Paye."**  This shall mean Paul and Evy Paye, LLC.

(DD)  **"Petition Date."**  This term shall refer to July 28, 2016, the date on which Debtor filed its voluntary petition commencing the above-captioned Chapter 11 case.

(EE)  **"Plan."**  This term shall refer to the Creditors' Second Amended Joint Plan of

Reorganization, together with any amendments or modifications thereto as may hereafter be filed, which shall apply to the Cal-Neva and the New Cal-Neva bankruptcy cases.

(FF) *"Property."* This term shall mean all real and personal real property owned by the Debtor (New Cal-Neva) including the improved real property located at 2 Stateline Road, Crystal Bay, Nevada, together with all furniture, fixtures, and equipment, and other personal property located at the Property or stored elsewhere on behalf of the Debtor, and the equity interest (to the extent it is valid) in CR Lake Tahoe, LLC (the "Fairwinds Estate").

(GG) "*Property Value."* This term shall mean the value of the Property as determined by appraisal(s) at the Confirmation Hearing.

(HH) *"Post Confirmation."* This term shall mean the period of time after the Confirmation Date.

(II) *"Plan Proponents"* or *"Proponents."* These terms shall mean Leslie P. Busick, David Marriner, Charles and Judith Munnerlyn, and John Paye, Trustee of Paul and Evy Paye, LLC.

(JJ) *"Reorganized Debtor."* This term means Newco following the Confirmation Date.

(KK) *"Secured Creditor Fund."* This term shall mean a sum equal to the value of the Property as described in §3.3.4.1 below.

(LL) *"Secured Creditors' Adversary Proceedings."* This term shall mean the adversary case entitled *The Penta Building Group, LLC v. Ladera Development, LLC*, Adversary No. 17-05007-GWZ, pending in the United States Bankruptcy Court for the District of Nevada, and the case of *The Penta Building Group, LLC v. New Cal-Neva Lodge, LLC, et al.*, originally filed in the Second Judicial District Court for the District of Nevada as Case No. CV-16-00837, and removed to the Bankruptcy Court where it is currently pending as Adversary No. 17-05003-GWZ.

(MM) *"Subcontractors."* This term shall mean all entities which provided materials or services to the Property and who have perfected mechanics lien rights against the Property.

(NN) *"Newco."* This term shall mean an entity to be formed between Sherman

Financial Group, LLC and Terramar Capital, LLC.

(OO) **"Unsecured Claim."** This shall mean a Claim that is not secured by a perfected pledge, security interest, or perfected mechanics lien on the Property.

(PP) **"Unsecured Creditors."** This term shall mean all creditors having claims against the Debtors not entitled to priority under Section 507 of the Bankruptcy Code, and not otherwise included in any other class under this Plan.

## 3. CLAIMS AND INTERESTS

### 3.1 Classification of Claims and Interests

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims and Interests. Administrative Claims and Priority Claims of the kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified and are excluded from the following classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.

Class 1: The Allowed Secured Claim of the Placer County Tax Collector.

Class 2: The Allowed Claim of Hall against New Cal-Neva secured by the Property, as evidenced by its promissory note, deed of trust, and related loan documents.

Class 3: The Allowed Claim of Ladera against New Cal-Neva secured by the Property and the membership interest in New Cal-Neva, as evidenced by its promissory note, deed of trust, and related loan documents.

Class 4: The Allowed Claim of Penta against New Cal-Neva to the extent secured by a valid mechanic's lien against the Property.

Class 5: The Allowed Claims of Subcontractors against New Cal-Neva against the Property.

Class 6: The Allowed Claims of Unsecured Creditors of New Cal-Neva.

Class 7: The Allowed Claims of Unsecured Creditors of Cal Neva.

Class 8: The Allowed Secured Claim of Capital One Bank (USA), N.A.

Class 9: The membership interest in New Cal-Neva held by Cal Neva.

Class 10: The membership interests in Cal Neva.

ESTES LAW
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

E:\Cal-Neva Cases\Plan & DS (Cal Neva)\Plan (3rd Amd) Cal-Neva 081517 hee.wpd -6-

**3.2 Unimpaired Classes**

All classes are impaired under the Plan.

**3.3 Treatment of Claims and Interests**

 **3.3.1 Class 1 (Placer County)**. The Allowed Secured Claim of the Placer County Tax Collector shall bear interest as allowed by statute, and shall be paid 50% on the Effective Date, and 50% 30 days thereafter.

 **3.3.2 Class 2 (Hall)**. The Allowed Claim of Hall (the "Hall Claim") shall be treated as set forth in §3.3.4.1 infra. To the extent Hall holds an Allowed Administrative Claim it shall be paid as set forth in §3.3.4.1. To the extent such claim is also secured, the portion paid as an Administrative Claim shall reduce the amount of the Secured Claim.

 **3.3.3 Class 3 (Ladera).** The Allowed Claim of Ladera (the "Ladera Claim") shall be treated as set forth in §3.3.4.1 infra.

 **3.3.4 Class 4 (Penta).** The Allowed Claim of Penta (the "Penta Claim") shall be treated as set forth in §3.3.4.1 infra.

**3.3.4.1 Treatment of Classes 2, 3 and 4.**

 (A) Secured Portion of Claims (Classes 2, 3 and 4).

On or before the Effective Date a sum equal to the value of the Property (the "Property Value"), less the amount owed to the Placer County Tax Collector, shall be deposited into a segregated escrow account under the name of the Disbursing Agent (the "Secured Creditor Fund"). The value of the Property, and thus the amount of the Secured Creditor Fund, shall be determined by appraisal evidence presented at the Confirmation Hearing. The liens of the Hall Claim, Ladera Claim (as secured by the Property) the Penta Claim (Penta, Hall, and Ladera are sometimes collectively referred to as the "Secured Creditors"), as well as the liens of all Subcontractors (to the extent not duplicative of the Penta claim), shall attach to the proceeds of the Secured Creditor Fund, and shall share in and be limited by the Secured Creditor Fund

based upon: (i) the final order of priority as determined by the outcome of the Secured Creditors' Adversary Proceedings, whether by litigation or settlement, and (ii) the final order determining any claim objections filed against any of the Secured Creditors. This Plan does not determine the priority or amount of the liens of the Secured Creditors and Subcontractors. The Secured Creditor Fund will be interpled in the Bankruptcy Court, or in another court of appropriate jurisdiction should circumstances warrant or should the Bankruptcy Court abstain.

(B)     Ladera's Claim As Secured By Interest In Cal Neva Lodge.

On account of its claim secured by the membership interest in New Cal-Neva, Ladera shall be entitled to a cash disbursement on the Effective Date equal to the difference between the Property Value and the total of all Claims against New Cal-Neva (the "Equity In New Cal-Neva"). If the Equity in New Cal-Neva is less than zero, there shall be no distribution to Ladera on account of is secured interest in the membership interest of New Cal-Neva.

(C)     Deficiency Claims Of Secured Creditors.

Any of the Secured Creditors may be entitled to a deficiency claim (the "Deficiency Claims") against the Debtor, based upon: i) the amount by which the Allowed Claim exceeds the Property Value less all senior secured claims; ii) the final outcome of the Secured Creditors' Adversary Proceedings; and iii) the final outcome of any objections to any claims of the Secured Creditors. In full and final satisfaction of the Deficiency Claim the sum of Two Hundred Thousand Dollars ($200,000) shall be distributed to the party (or parties) entitled to the Deficiency Claim, to be distributed pro rata based on the Allowed Deficiency Claim of each creditor.

**3.3.5   Class 5 (Subcontractors)**

The Allowed Claims of Subcontractors will be paid by Penta, or by the Secured Creditors Fund as set forth in §3.3.4.1, or to the extent such claims are unsecured, in

accordance with the treatment of Class 6 unsecured creditors below.

### 3.3.6 Class 6 (Unsecured Creditors of New Cal-Neva)

The Allowed Claims of Unsecured Creditors shall receive a prorata distribution of the New Cal-Neva Unsecured Creditor Fund. The undisputed portion of the claim shall be paid on the Effective Date. The portion of the claim that is disputed shall be maintained in the New Cal-Neva Disputed Unsecured Claims Account and shall be paid if and when the claim is adjudicated an Allowed Claim following the Claim Objection Procedure.

### 3.3.7 Class 7 (Unsecured Creditors of Cal Neva)

The Allowed Claims of Unsecured Creditors shall receive a prorata distribution of the Cal Neva Unsecured Creditor Fund. The undisputed portion of the claim shall be paid on the Effective Date. The portion of the claim that is disputed shall be maintained in the Cal Neva Disputed Unsecured Claims Account and shall be paid if and when the claim is adjudicated an Allowed Claim following the Claim Objection Procedure.

### 3.3.8 Class 8 (Capital One Bank)

The Allowed Claim of Capital One Bank shall be cured on the Effective Date, and thereafter shall be paid as agreed. All loan documents shall remain in effect to the extent not inconsistent with this Plan.

### 3.3.9 Class 9 (Membership Interest in New Cal-Neva)

The membership interests in New Cal-Neva held by Cal Neva shall be canceled.

### 3.3.10 Class 10 (Membership Interests in Cal Neva)

The membership interests in Cal Neva shall be cancelled.

## 4. TREATMENT OF UNCLASSIFIED CLAIMS

### 4.1 Administrative Claims

Claims arising during the administration of both the Cal Neva bankruptcy case and the New Cal-Neva bankruptcy case are entitled to priority under Section 507(a)(1) of the Bankruptcy Code are not classified under the Plan. Holders of such claims shall be paid in full on the latter of the Effective Date, or fifteen (15) days after entry of an order allowing the Administrative Claim. Counsel for the Plan Proponents shall be paid directly by the Plan

Proponents.

### 4.2 Administrative Claims Bar Date

Requests for payment of Administrative Claims must be filed and served no later than forty-five (45) days after the Effective Date. Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such Claims by such date shall be forever barred, estopped, and enjoined from asserting such claims against the Debtors, the Reorganized Debtor, or their assets or Property and such Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, may be filed and served according to applicable bankruptcy rules. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by a Final Order, including any and all Administrative Claims expressly Allowed under the Plan.

### 4.3 Fees to the United States Trustee

All fees required to be paid to the United States Trustee will be paid in full upon the Effective Date of the Plan, and shall remain current until the case is fully administered, closed, converted or dismissed, whichever occurs first. Such fees shall be paid from the Plan Fund.

### 4.4 Priority Claims

Allowed Priority Claims shall bear interest prior to the Effective Date at the rate specified under Nevada law, or other applicable law, and to the extent no objection has been filed, shall be paid on the Effective Date. Any objection to any Priority Claim shall be filed prior to the Effective Date.

///
///
///
///
///
///

## 5. EXECUTORY CONTRACTS

The Debtor's executory contracts with various entities shall be assumed or rejected as set forth below:

| Contract | Description of Contract | Treatment |
| --- | --- | --- |
| Collaborative Design Studio | Architectural and engineering services contract | Rejected - subject to renegotiation |
| CR Hospitality, LLC | Operating agreement | Rejected |
| NorthStar Demolition and Remediation, LP | Contracting services contract | Rejected - subject to renegotiation |
| Paul Duesing Partners | Design services contract | Rejected - subject to renegotiation |
| The Penta Building Group | Construction contract | Rejected |
| Thannisch Development Services Inc. | Development consulting services contract | Rejected |
| Starwood/Marriot | Franchise Agreement | Rejected |
| CBRE, Inc. | Exclusive Sales Listing Agreement | Rejected |
| Dixon, Michael and Sharon | Condominium Purchase Discount Agreement | Rejected |
| Iverson, Brandyn | Condominium Purchase Discount Agreement | Rejected |
| Jameson, Paul | Condominium Purchase Discount Agreement | Rejected |
| Munnerlyn, Charles R. And Judy G. | Condominium Purchase Discount Agreement | Rejected |
| Hill, Heather | Condominium Purchase Discount Agreement | Rejected |
| Pacey-Willis, Lisa | Condominium Purchase Discount Agreement | Rejected |

## 6. MEANS OF IMPLEMENTING THE PLAN

### 6.1 New Financing to Fund Plan

The Plan will be funded by an entity to be formed between Sherman Financial Group, LLC and Terramar Capital, LLC ("Newco"). Newco will provide all cash necessary to fund the plan. Sherman Financial Group, LLC ("Sherman"), Terramar Capital, LLC ("Terramar"),

1  and/or Newco will submit an earnest money deposit in the amount of $2,000,000.00 into an
2  Estes Law trust account in connection with the New Financing not later than six (6) calendar
3  days prior to the Plan Confirmation hearing. Additionally, not later than six (6) calendar days
4  prior to the Plan Confirmation hearing, Sherman, Terramar, and/or Newco will submit all
5  materials necessary to the financial advisor employed by the unsecured creditor's committee
6  to ensure proof of funds to adequately fund the Plan. The submission of materials to the
7  financial advisor will be subject to a confidentiality agreement subject to approval by
8  Sherman and Terramar. On the date of the Plan Confirmation Hearing Sherman, Terramar
9  and Newco will have performed all due diligence necessary and no conditions will remain.

10  Sherman is a highly experienced and active global investment company with a 15-year
11  track record of unparalleled success during a period of vast market fluctuation. Sherman
12  specializes in the development of innovative solutions that optimize long term value.
13  Sherman's track record of successful diversification, risk management, growth and
14  performance has earned it the confidence of regulators, lenders and investors. Sherman
15  defines the standard for the consumer finance industry and endeavors to exceed the
16  expectations of its stakeholders.

17  The collective infrastructure of Sherman's portfolio companies provide the unique
18  advantage of being a strong operating partner with the ability to transact in all consumer
19  finance, corporate and real estate asset classes. The combination of Sherman's operational
20  expertise and specialized servicing platforms has made it a one-stop choice for companies
21  seeking an investor for traditionally hard to service deep value assets. This unique
22  organizational structure has provided Sherman with a solid foundation for consistent
23  investment success.

24  Sherman, through its affiliated companies, has invested $7 billion to date and arranged
25  in excess of $3 billion in financing for portfolio companies. As a privately-held company,
26  Sherman employs a streamlined decision making process and is not constrained by
27  investment timelines and structural restrictions faced by traditional investment funds. While
28  the ability to act quickly can often be crucial to successful investing, Sherman believes that

patience and careful due diligence is an even more important element to success.

**6.2    Vesting of Assets of the Estates**

On the Effective Date, except as otherwise provided in the Plan, all Property of both of the Debtors' estates shall vest in Newco free and clear of all liens and Claims, including, without limitation, all real and personal Property, all Retained Causes of Action, interests, claims, chose in action, and all rights under any contracts assumed hereunder (executory or otherwise), against any Person.  On and after the Effective Date, Newco may operate its business and use, acquire, or dispose of Property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  On the Effective Date, except as otherwise provided in the Plan, all causes of action of both of the Debtors' estates shall vest in Newco free and clear of all Liens and Claims.  The operating agreement of Newco shall comply with §1123(a) of the Bankruptcy Code.

**6.3    Disbursing Agent**

The Plan Proponents shall designate a certified public accountant in Reno, Nevada as disbursing agent (the "Disbursing Agent"), who shall hold all funds in a segregated trust account and disburse all money to be distributed under the Plan.  The Disbursing Agent may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.  All disbursements under the Plan shall be made pursuant to motion, Notice and Hearing, and approval of the Bankruptcy Court.  The Disbursing Agent shall be entitled to reasonable compensation for his services to be paid by the Proponents.

**6.4    Completion of Improvements**

Following confirmation of the Plan, Newco will complete all improvements necessary to bring the Property to full operation.  Newco is negotiating with Penta to complete the project, and anticipates a fully executed construction agreement prior to Plan confirmation. The Plan Proponents anticipate a fully executed construction agreement with Penta prior to the Confirmation Hearing on the Plan. The projections of the cost of completion are attached

as **Exhibit** "**J**" to the Disclosure Statement. Additionally, a summary of the cost to complete the project, and the pre-opening costs is attached as **Exhibit** "**K**" to the Disclosure Statement.

### 6.5     Post-Confirmation Management of the Debtor

The post-confirmation operations of Newco will be managed by Viceroy Hotel Group, LLC ("Viceroy"). The Plan Proponents are currently negotiating an agreement with Viceroy, and estimate the agreement will be funded by May 26, 2017.

Recognized as one of the most innovative operators on the current hotel landscape, Viceroy has magnetized contemporary travelers, the hospitality industry and lifestyle media alike with its pacesetting hotels and resorts. With a diverse portfolio of properties, Viceroy has created a collection of distinctive luxury properties offering innovative style, unique design and advanced service in the world's most sought-after destinations.

- Viceroy offers a range of services including:
- Professional third-party hotel management services for owners seeking branded and unbranded operations, with a focus on luxury hotels.
- Strategic and financial partnerships with locally based owner-developers, allowing for the maximization of core competencies.
- Acquisition of hotels without existing management contracts in primary locations, offering upside opportunities for repositioning through advanced operational and design initiatives.
- Development and construction of traditional hotel and resort destinations, providing a brand and operational anchor.
- Seasoned global sales, marketing, digital and e-commerce strategies.
- Professional asset management.
- Design support and technical services.

Further information can be found on its website at viceroyhotelsandresorts.com.

### 6.6     No Election Under 1111(b)

None of the Secured Creditors shall be entitled to an election under §1111(b) of the Bankruptcy Code on the basis that the Property is to be transferred pursuant to §363

of the Bankruptcy Code, and therefore the election is prohibited by §1111(b)(1)(B)(ii). The election is further prohibited because the claims of the Secured Creditors are disputed pursuant to the Secured Creditors Adversary Proceedings.

### 6.7 Exemption from Certain Taxes and Fees

Pursuant to Bankruptcy Code section 1146(a), any transfers of property pursuant to the Plan shall not be subject to any stamp, real estate transfer, sales, use tax or other similar state or local tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate sate or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without payment of any such tax or governmental assessment.

## 7. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Pursuant to the Plan, funding will be accomplished by a new loan and a new contribution. Creditors are advised to discuss with their own tax advisor any tax effect to the creditor of such payments.

## 8. INJUNCTION

From and after the Effective Date, and except as provided in the Plan and the Confirmation Order, all entities that have held, currently hold or may hold a Claim or Outstanding Securities are permanently enjoined from taking any of the following actions on account of any such Claims or Outstanding Stock: (i) commencing or continuing in any manner any action or other proceeding against the Debtor; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Reorganized Debtor; (iii) creating, perfecting or enforcing any lien or encumbrance against the Reorganized Debtor; (iv) asserting a setoff, right of subrogation or recoupment or any kind against any debt, liability, or obligation due to the Reorganized Debtor, or their respective property; or (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

**9.     MISCELLANEOUS PROVISIONS**

(A)     Confirmation of the Plan constitutes a discharge pursuant to 11 U.S.C. § 1141 of any and all liabilities of the Debtor which are discharged pursuant to the provisions of the Bankruptcy Code.

(B)     Any creditor who is not scheduled in the Disclosure Statement or who failed to file a proof of claim on or before any Court imposed claims bar date, shall be barred from participating in any distribution under the Plan, and the Debtor shall have no further liability for such claim.

(C)     Following the Effective Date, the Debtor may continue to employ counsel for necessary legal services. Counsel may be paid from the Debtor without further order of the Court.

(D)     The estate shall be deemed to be fully administered upon commencement of any disbursements to creditors as described above.

**10.    RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction for the following specific purposes:

(A)     For the purpose specified in § 1142 of the Bankruptcy Code;

(B)     The consideration of claims and such objections as may be filed to the claims of creditors pursuant to § 502 of the Bankruptcy Code, and to file and prosecute any counterclaims against such creditors;

(C)     The fixing of compensation for the parties entitled thereto;

(D)     To hear and determine the recovery of any preferences, transfers, fraudulent conveyances, assets or damages to which the Debtor's estate may be entitled under applicable provisions of the Bankruptcy Code or other federal, state, or local law, including those described in section 8.6 above;

(E)     To reinstate the automatic stay pending a determination of the amount owed on any secured claim;

(F)     To hear and decide all causes of action now held by the Debtor, or disclosed in the Plan or Disclosure Statement;

(G) To hear and decide all adversary proceedings or contested matters currently pending in the Bankruptcy Court, or which may be filed prior to or after plan confirmation;

(H) To resolve any disputes regarding interpretation of the Plan;

(I) To implement the provisions of the Plan, including all provisions in the Plan which specify the retention of jurisdiction, and to make such further orders as will aid in consummation of the Plan, specifically including the disbursement procedure by the Disbursing Agent;

(J) To adjudicate controversies regarding property of the Debtor's estate and regarding ownership thereof, including adjudication of causes of action which constitute property of the estate;

(K) To modify this Plan in accordance with § 1127 of the Bankruptcy Code;

(L) To enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order; and

(M) Enter a final decree and order closing the case.

**11. MODIFICATION OF PLAN**

The Proponents may modify the Plan with regard to the treatment of any creditor class, in connection with any agreement or settlement with such creditor class or in order to comply with requirements of the Code as established by the Court, provided such modification does not materially adversely affect any other class of creditors. Such modifications may be reflected in the order confirming the Plan. Any other modification of the Plan shall be in accordance with § 1127 of the Code.

**DATED** this 15th day of August, 2017.

ESTES LAW

By: */s/ Holly E. Estes*
HOLLY E. ESTES, ESQ.
Attorney for the Plan Proponents